# Exhibit A

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **SHRYL MARTIN**, an adult individual,<br>1212 Brownfield Road<br>Uniontown, PA 15401 | CIVIL DIVISION |
| | CASE NO.:  GD-17 - 004333 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| **CIGNA GROUP INSURANCE**, a foreign<br>corporation,<br>Cigna Corporate Headquarters<br>900 Cottage Grove Road<br>Bloomfield, CT 06002 | Code 010 - Assumpsit |
| | **JURY TRIAL DEMANDED** |
| | Filed on behalf of Plaintiff. |
| - and – | COUNSEL OF RECORD FOR THIS<br>PARTY: |
| **AMERICAN HEALTH AND LIFE<br>INSURANCE COMPANY**, a foreign<br>corporation,<br>3001 Meacham Blvd. Suite 100<br>Fort Worth, TX 76113-2548 | David M. Kobylinski, Esquire<br>Pa. ID No.:  92233 |
| | Peter T. Kobylinski, Esquire<br>Pa. ID No.:  309832 |
| - and - | |
| **BAYVIEW LOAN SERVICING, LLC,** a<br>foreign company,<br>4425 Ponce De Leon Blvd., 5th Floor<br>Coral Gables, FL 33164 | PRAETORIAN LAW GROUP, LLC<br>515 Court Place, Ste 4<br>Pittsburgh, PA  15219<br>(412) 281-6600 |
| Defendants. | |
| -and- | |
| **CITIFINANCIAL SERVICES, INC.,** a<br>foreign corporation,<br>2 Court Square<br>Long Island City, NY 11101 | |
| Additional Defendant | |

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **SHRYL MARTIN**, an adult individual,    ) | CIVIL DIVISION |
|       Plaintiff,    ) | |
|    ) | CASE NO.: GD-17 - 004333 |
|       v.    ) | Code 010 - Assumpsit |
|    ) | |
| **CIGNA GROUP INSURANCE**, a foreign    ) | **JURY TRIAL DEMANDED** |
| corporation, **AMERICAN HEALTH AND**    ) | |
| **LIFE INSURANCE COMPANY**, a foreign    ) | |
| corporation, **BAYVIEW LOAN**    ) | |
| **SERVICING, LLC,** a foreign company,    ) | |
|    ) | |
|       Defendants.    ) | |
|    ) | |
| -and    ) | |
|    ) | |
| **CITIFINANCIAL SERVICES, INC.,** a    ) | |
| foreign corporation.    ) | |

## NOTICE TO DEFEND

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.  YOU SHOULD TAKE THIS PAPER TO A LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

        Lawyer Referral Service
        Allegheny County Bar Association
        11th Floor Koppers Building
        436 Seventh Avenue
        Pittsburgh, PA  15219
        (412) 261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| Plaintiff, | CIVIL DIVISION |
| v. | CASE NO.:  GD-17 - 004333 |
| **CIGNA GROUP INSURANCE**, a foreign corporation, **AMERICAN HEALTH AND LIFE INSURANCE COMPANY**, a foreign corporation, **BAYVIEW LOAN SERVICING, LLC,** a foreign company, | Code 010 - Assumpsit |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |
| -and | |
| **CITIFINANCIAL SERVICES, INC.,** a foreign corporation. | |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Shryl Martin, individually and on behalf of the Class described below to make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### PARTIES AND VENUE

1.  Shryl Martin is an adult citizen of Pennsylvania who resides at 1212 Brownfield Road, Uniontown, PA 15401.

2.  CitiFinancial Services, Inc. ("CitiFinancial") is a New York corporation with its principal place of business located at 2 Court Square, Long Island City, NY 11101.

3.  Bayview Loan Servicing, LLC, d/b/a Bayview ("Bayview"), is a Forida company, with its principal place of business located at 4435 Ponce de Leon Boulevard, Suite 500, Coral Gables, FL 33146.

4. Cigna Group Insurance ("Cigna") is a Connecticut insurance company licensed to do business in Pennsylvania with its principal place of business located at 900 Cottage Grove Road, Bloomfield CT 06002. Cigna is not being named as a defendant in the Class action.

5. American Health and Life Insurance Company ("American Health") is a Texan insurance company licensed to do business in Pennsylvania with its principal place of business located at 3001 Meacham Boulevard, Suite 100, Fort Worth, TX 76113-2548.

6. Venue is appropriate in Allegheny County because one or more defendants routinely conduct business in this county on a regular and continuing basis.

## MATERIAL FACTS AS TO THE CLASS ACTION

7. On or around May 22, 2009, Plaintiff obtained a mortgage secured loan on her residence from CitiFinancial. A copy of the Disclosure Statement, Note and Security Agreement is attached hereto as Exhibit "A".

8. As part of her loan agreement, plaintiff purchased credit life insurance and credit disability insurance from American Health. American Health is a wholly owned subsidiary of CitiFinancial. At this time, Plaintiff is not in possession of the insurance contract she entered into with American Health and Life and is unable to attach a copy of the same to this pleading.

9. As to the disability insurance, plaintiff paid an initial credit disability insurance premium in the amount of $30.30 per month.

10. In exchange for the monthly premium American Health promised to provide Plaintiff with disability insurance for a maximum period of sixty (60) months. In other words, under the terms of the disability insurance agreement, American Life promised Plaintiff

that if she were to become disabled, then her mortgage payments would be paid by American Life for up to five (5) years.

11. On or around October 27 2012, Plaintiff became disabled. Her disability credit insurance policy was subsequently approved. American Health and Life thereafter became obligated to service Plaintiff's until or around May 2018.

12. On or around January 5, 2015, American Health advised Plaintiff that it was terminating the Credit Life and Disability Insurance programs that it had offered through CitiFinancial. American Health advised, however, that claims that had been approved previously to the termination date, such as Plaintiff's, would not be affected by the termination.

13. CitiFinancial advised Plaintiff that she would not have to make payments on her mortgage, per the terms of the credit disability insurance, until May 2018.

14. Prior to September 2015, CitiFinancial sold and/or assigned Plaintiff's mortgage to Bayview.

15. Bayview's purchase of Plaintiff's mortgage did not affect plaintiff's terms and obligations under the mortgage agreement she entered into with CitiFinancial. Nor did Bayview's purchase of the mortgage affect any obligations owed to Plaintiff by American Health.

16. Bayview initially honored the period of disability promised to plaintiff by CitiFinancial and American Health. Bayview advised Plaintiff that she would not be required to make mortgage payments until or around May 2018.

17. In or around July 2016, Bayview demanded that Plaintiff begin making monthly mortgage payments would have to be paid by her beginning in October 2016.

18. Plaintiff advised Bayview that her period of disability had not yet expired as had been promised to her by both CitiFinancial and American Health prior to her mortgage-secured loan being sold to Bayview.

19. In spite of being made aware of the same, Bayview continued to attempt to collect monthly mortgage payments from Plaintiff and threatened to initiate foreclosure proceedings against Plaintiff.

20. In addition, Bayview has embarked on a campaign of harassment against Plaintiff that has caused her great shame and emotional injury.

21. For example, Bayview posted or caused to be posted a notice on the door of Plaintiff's neighbor that falsely stated that she was in default on her mortgage and faced for.

22. As a result of Bayview's threats to initiate foreclosure as well as its harassing behavior, plaintiff was forceded to renew making mortgage payments at new and more unfavorable terms than she had prior to the onset of her disability.

23. Plaintiff believes and therefore avers that a large number of other persons are similarly situated in that:

    a)      they had obtained a mortgage secured loan from CitiFinancial;

    b)      obtained credit disability insurance from American Health and Life Insurance Company;

    c)      became disabled only to have their mortgages sold and/or assigned to other loan servicing companies, such as Bayview; and

    d)      thereafter faced demands from the loan servicing companies to which their loans were sold and/or assigned to make payments on the loan because CitiFinancial

and its subsidiary, American Health, ceased making payments during the benefit period of their credit disability insurance.

## CLASS ACTION ALLEGATIONS

24.  Description of the Class and Sub-Class: Plaintiff brings this Class action on behalf of herself and a Class defined as follows:

> All natural persons within the United State of America who: (1) have obtained a mortgage-secured loan from CitiFinancial and/or one of its subsidiaries; (2) have purchased credit disability insurance from American Health and/or another subsidiary of CitiFinancial; (3) who became disabled prior to their loan being sold and/or by CitiFinancial; and (4) who have since faced demands for mortgage payments during the benefit period of their credit disability insurance. Members of this Class can be identified by records maintained by defendants.

Plaintiff brings this action on behalf of herself and a Sub-Class defined as follows:

> All natural persons within the Commonwealth of Pennsylvania who: (1) have obtained a mortgage-secured loan from CitiFinancial and/or one of its subsidiaries; (2) have purchased credit disability insurance from American Health and/or another subsidiary of CitiFinancial; (3) who became disabled prior to their loan being sold and/or by CitiFinancial; and (4) who have since faced demands for mortgage payments during the benefit period of their credit disability insurance. Members of this Class can be identified by records maintained by defendants.

25.  Excluded from the Class and Sub-Class are Defendants' officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class and Sub-Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

26. Numerosity: The proposed Class and Sub-Class are so numerous that individual joinder of all members is impracticable.

27. Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and the Class and Sub-Class, and those questions substantially

predominate over any questions that may affect individual Class and Sub-Class members. Common questions of fact and law include:

(a)    whether Bayview is unlawfully attempting to collect monthly mortgage payments in breach of the contracts entered into with CitiFinancial and/or its wholly owned credit insurance subsidiaries;

(b)    whether Bayview defamed the Class by inaccurately reporting that they were delinquent on mortgages;

(c)    whether the Bayview, CitiFinancial and/or American Health have violated the Truth in Lending Act (15 U.S.C. § 1601 *et seq.*) by causing the Class to incur higher mortgage costs than originally agreed to;

(d)    whether the Bayview CitiFinancial and/or American Health and Life Insurance Company have engaged in bad faith insurance practices prohibited by law;

(e)    whether the Bayview, CitiFinancial and/or American Health have breached the credit disability insurance applications entered into by the Class with CitiFinancial and/or its wholly owned credit insurance subsidiaries;

(e)    should the running of the statute of limitations for the Class's claims be equitably tolled.

28. Typicality: Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class. Plaintiff and all members of the Class and Sub-Class have been similarly affected by illegal collection tactics by the Defendants.

29. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class and Sub-Class. Plaintiff has retained counsel with experience in prosecuting complex and Class action litigation. Plaintiff and her counsel are committed

to vigorously prosecuting this action on behalf of the Class and Sub-Class, and have the financial resources to do so.

30. <u>Superiority of Class Action</u>: Plaintiff and the members of the Class and Sub-Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. A Class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class and Sub-Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The Class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The conduct of this action as a Class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members.

### Count 1 - CLASS ACTION - Breach of Contract

**Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. CitiFinancial, Bayview and American Health**

31. The foregoing paragraphs are incorporated herein as if set forth at length.

32. Plaintiff and others similarly situated entered into mortgage secured loan with CitiFinancial in which they received a loan secured by their residence in return for which they were to make monthly payments of principal, interest and other amounts.

33. Plaintiff and others similarly situation entered into a credit disability insurance contract with American Health involving mortgage secured loans from CitiFinancial.

34. Under the terms of the credit disability insurance contracts, in exchange for a monthly premium, American Health promised to service plaintiffs' mortgage for a defined period in the event plaintiffs became disabled.

35. Plaintiff and others similarly situated became disabled and thereafter American Health became obligated to make mortgage payments on behalf of Plaintiff and others similarly situated.

36. Sometime in or around January 2015, American Health ceased underwriting credit insurance for loans issued by CitiFinancial. American Health represented that the cancellation would not affect any insurance claims that had already been approved.

37. CitiFinancial thereafter confirmed to persons who were eligible for disability insurance benefits from American Health they were not responsible for payments for the length of time associated with their disability insurance.

38. Sometime in, around or prior to September 2015, CitiFinancial sold or assigned its mortgage-secured loans to loan servicing companies, such as defendant Bayview.

39. CitiFinancial and/or American Health thereafter ceased making disability payments on the loans that were sold and/or assigned.

40. In October 2016, Bayview demanded that Plaintiff resume making monthly payments on the mortgage.

41. Plaintiff believes and therefore avers that others similarly situated face or have faced similar demands to resume servicing the mortgage despite their remaining within the benefit period of their credit disability insurance policy.

42. Plaintiff should not have been required to resume making mortgage payments until or around May 2018.

43. Under the terms of the credit disability insurance policy, American Health and Life is obligated to make payment of premiums to CitiFinancial and/or its assign for the period set forth in its policies with Plaintiff and others similarly situated.

44. American Health's failure to make such payments constitutes a breach of its insurance contract.

45. CitiFinancial's and/or Bayview's refusal to abide by the terms of the mortgage contract as it existed between Plaintiff and CitiFinancial likewise constitutes a breach of contract.

46. Wherefore, plaintiffs and the Class request an award of damages, statutory interest, court costs and attorneys' fees.

### Count 2 - CLASS ACTION - Bad Faith Insurance

**Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. American Health and CitiFinancial**

47. The foregoing paragraphs are incorporated herein as if set forth at length.

48. Under the terms of the insurance contract, Plaintiff and others who are similarly situated are entitled to credit disability benefits for the period of their disability.

49. American Health and/or CitiFinancial have acted in bad faith in their handling of insurance contracts in that they has ceased to honor their obligations under the credit disability insurance contract resulting in Plaintiff, the Class and Sub-Class becoming obligated to resume making monthly service on their mortgages or face the threat of foreclosure. They have also acted in bad faith in general and through through the following particulars:

a.   by failing to properly investigate, evaluate, negotiate and otherwise properly handle the claim;

b.   knowing that plaintiffs were disabled, they preyed on plaintiffs and exploited their situation;

c.   by engaging in improper, unfair, and unlawful claims handling and insurance practices which demonstrate bad faith;

d.   by failing to objectively and fairly evaluate the claim;

e.   by failing to give equal consideration to accepting the claim as denying the claim;

f.   by analogy, in violating the Pennsylvania Code requirements for proper insurance practices, including but not limited to 31 Pa. Code 146.6 and other code requirements in the Member Class States;

g.   by analogy, in failing to comply with the requirements of Pennsylvania's Unfair Insurance Practices Act and other code requirements in the Member Class States;

h.   by engaging in an adversarial relationship with plaintiffs; and

i.   by requiring plaintiffs to incur substantial counsel fees, and to institute suit to obtain the coverage for which plaintiff had paid thereby deliberately and unwarrantedly delaying payment of the claim.

50. Defendant's actions amount to a violation of 42 Pa.C.S. § 8371 in that it was aware that plaintiffs are entitled to credit disability insurance benefits but has refused in bad faith to provide the same.

51. Where members of the Class reside in jurisdictions other than the Commonwealth of Pennsylvania, and where Pennsylvania law is deemed not to apply, the actions of

American Health and/or CitiFinancial constitute bad faith insurance practices under laws of the jurisdiction of said Class member.

52. Wherefore, plaintiffs and the Class request an award of damages, statutory interest, punitive damages, court costs and attorneys' fees.

### Count 3 - CLASS ACTION - DEFAMATION

**Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. Bayview**

53. The foregoing paragraphs are incorporated herein as if set forth at length.

54. Bayview has caused the credit report of Plaintiff to inaccurately show that she missed payments on her mortgage.

55. Prior to causing these entries to appear on Plaintiff's credit reports, Bayview knew or should have known that CitiFinancial and/or American Health were responsible for servicing Plaintiff's Mortgage until May 2018.

56. Bayview in fact recognized that payments were not due until May 2018 in its initial correspondence with Plaintiff.

57. Upon information and belief, Bayview has caused similar false reports of mortgage delinquency to appear on the credit reports of members of the Class and Sub-Class.

58. Bayview's actions have caused Plaintiff, the Class and the Sub-Class to incur substantial amounts of harm, including:

    a)    loss of economic opportunity as a result of bad credit score;

    b)    incurring higher interest rates as a result of a bad credit score;

    c)    loss of ability to obtain necessary credit for household and family needs;

    d)    loss of credit opportunity;

    e)       emotional distress as the result of having bad credit; and

    f)       dignitary harm for having the stigma of bad credit or being financially

    irresponsible.

59. Wherefore, Plaintiff, the Class and Sub-Class request an award of damages and punitive

damages.

**Count 4 - CLASS ACTION - VIOLATION OF THE FAIR CREDIT REPORTING ACT,
15 U.S.C. § 1681, et seq.**

**Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. Bayview**

60. The foregoing paragraphs are incorporated herein as if set forth at length.

61. Bayview has caused the credit report of Plaintiff to inaccurately show that she missed

payments on her mortgage.

62. Prior to causing these entries to appear on Plaintiff's credit reports, Bayview knew or

should have known that CitiFinancial and/or American Health were responsible for

servicing Plaintiff's Mortgage until May 2018.

63. Bayview in fact recognized that payments were not due until May 2018 in its initial

correspondence with Plaintiff.

64. Upon information and belief, Bayview has caused similar false reports of mortgage

delinquency to appear on the credit reports of members of the Class and Sub-Class.

65. Bayview's actions amount to a violation of the Fair Credit Reporting Act, 15 U.S.C. §

1681, *et seq.*

66. Bayview's actions have caused Plaintiff, the Class and the Sub-Class to incur substantial

amounts of harm, including:

    a)       loss of economic opportunity as a result of bad credit score;

    b)       incurring higher interest rates as a result of a bad credit score;

    c)       loss of ability to obtain necessary credit for household, business and family needs;

    d)       loss of credit opportunity;

    e)       emotional distress as the result of having bad credit; and

    f)       dignitary harm for having the stigma of bad credit or being financially irresponsible.

67. Wherefore, Plaintiff, the Class and Sub-Class request an award of damages as permitted by law, interest, court costs as well as an award of attorneys' fees.

**Count 5 - CLASS ACTION - VIOLATION OF THE TRUTH-IN-LENDING ACT**

**Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. CitiFinancial, American Health and Bayview**

68. The foregoing paragraphs are incorporated herein as if set forth at length.

69. The Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, required CitiFinancial and American Health to disclose to Plaintiff the true amount of finance charges she would incur under the mortgage secured loan she entered into with the same, which is attached hereto as Exhibit "A".

70. The finance charges represented to Plaintiff by CitiFinancial and American Health were not accurate in that the amount quoted as a disability insurance premium was not in effect an insurance premium as CitiFinancial and American Health failed to provide the associated insurance.

71. Upon information and belief, this misrepresentation of finance charges occurred not only to Plaintiff but to members of the Class and Sub-Class.

72. Bayview, as an assignee of the mortgage-secured loan, was obligated to charge Plaintiff, the Class and Sub-Class only the finance charges disclosed to them by CitiFinancial and American Health.

73. The actions of CitiFinancial, American Health and Bayview caused Plaintiff, the Class and the Sub-Class substantial actual damages in that they were required to make payments during the period of disability that they should not otherwise have been required to make.

74. Plaintiff was threatened with foreclosure and loss of her home over the same.

75. Upon information and belief, other members of the Class and Sub-Class received similar threats as well.

76. Wherefore, Plaintiff, the Class and Sub-Class request an award of damages as permitted by law, interest, court costs  as well as an award of attorneys' fees.

### Count 5 - INDIVIDUAL ACTION - ERISA § 502(a)(1)(B), 503

### Shryl Martin, on behalf of herself only, v. Cigna

77. Prior to October 27, 2012, Plaintiff was employed with Aldi, Inc. as a cashier.

78. As part of her employment benefits with Aldi, Inc., plaintiff was provided a short-term and long-term disability policy through Cigna.

79. Plaintiff became disabled on or around October 27, 2012.

80. Cigna determined Plaintiff was disabled under the terms of its short-term disability policy on or around November 29, 2012.

81. Cigna thereafter continued to renew Plaintiff's short-term disability benefits until or around March 19, 2013. At this time Cigna informed plaintiff that they were evaluating her claim for long-term disability benefits.

82. Cigna approved Plaintiff for long-term disability benefits on May 2, 2013.

83. Prior to May 20, 2015, Cigna informed plaintiff that she would was no longer eligible for long-term disability benefits. Plaintiff appealed the decision, which Cigna denied on or around May 20, 2015.

84. Cig na determined Plaintiff was capable of employment in spite of plaintiff providing Cigna with medical evidence that she was not capable of the same.

85. Plaintiff is not capable of employment and remains eligible for long-term disability benefits per the terms of Cigna's policy.

86. Cigna's denial of her claim was arbitrary and capricious.

87. Cigna's administrators further failed to fully and fairly review Plaintiff's claim for benefits, and provided her with a written denial that was unclear and deficient.

88. Plaintiff exhausted all of her administrative requirements under the plan, including its appeal process.

89. In denying Plaintiff's claim for benefits, Cigna's adminstrators failed to comply with the plan's procedural requirements and acted in bad faith toward Plaintiff.

90. Wherefore, Plaintiff, the Class and Sub-Class request an award of damages as permitted by law, interest, court costs  as well as an award of attorneys' fees.

**Count 6 - CLASS ACTION - Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law**

**Shryl Martin, on behalf of herself and the Sub-Class, v. CitiFinancial and American Health**

91.     Plaintiff incorporates by reference the preceding paragraphs.

92.      Defendants made promises through their policies and documentation stating that the credit disability insurance that they provided was of a certain quality and that its insurance benefits would be available in case Plaintiff and the Sub-Class became disabled.

93.     To the contrary, the insurance benefits provided by these two defendants did not match up with the insurance provided to Plaintiff and the Sub-Class. These deceptive promises and guarantees were false when made and were made by the Defendants with knowing falsity.

94.     The foregoing misrepresentations regarding credit disability insurance were deceptive and caused Plaintiff and the Plaintiff's Sub-Class members to suffer monetary damages.

95.     The aforesaid misrepresentations and conduct violated the Unfair Trade Practices and Consumer Protection law 73 P.S. § 201-2(4) (v), (vii), (xiv), (ix) and (xxi) by:

      (a)     Representing that services have characteristics  uses, benefits that they do not have;

      (b)     Representing that services are of a particular standard, quality if they are of another;

      (c)     Failing to comply with the terms of any written guarantee or warranty given at, prior to, or after a contract for the purchase of is made;

      (d)     Advertising services with intent not to sell them as advertised;

      (e)     Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

96.     As a result of the conduct set forth above, Plaintiff and Plaintiff's Sub-Class members have suffered damages through these two Defendants' failure to provide the credit disability

insurance advertised, interest, attorney fees, litigation expenses and seek all statutory damages

under the UTPCPL including treble damages

## PRAYER FOR RELIEF

97.   Plaintiff incorporates by reference the preceding paragraphs.

98.   WHEREFORE, Plaintiff respectfully prays for relief as follows;

      A.   That an order be entered certifying the proposed Class and Sub-Class and appointing Plaintiff and her counsel to represent the Class and Sub-Class;

      B.   That judgment be entered against each Defendant for all damages as allowed by law;

      C.   That punitive damages be awarded to Plaintiff, the Class and Sub-Class and against each Defendant as appropriate by law;

      D.   That the purchase money loans associated with each mortgage-secured loan be rescinded and that Defendants be disgorged of the benefits that they have received from Plaintiff and the Class;

      e.   That the Court award costs and reasonable attorneys' fees

**TRIAL BY JURY DEMANDED FOR ALL COUNTS**

         Respectfully submitted,

         **PRAETORIAN LAW GROUP, LLC**

            /s/ David M. Kobylinski
         David M. Kobylinski, Esquire
         Peter T. Kobylinski, Esquire
         515 Court Place, Ste 4
         Pittsburgh, PA 15219

Dated: September 1, 2017

## Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| SHRYL A MARTIN<br>1112 BROWNFIELD ROAD<br>UNIONTOWN PA 15401 | CITIFINANCIAL SERVICES, INC.<br>575 MORGANTOWN ROAD<br>UNIONTOWN   PA   15401 | 222902<br>Date of Loan<br>05/22/2009 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 11.67  % | $  80,525.78 | $  50,627.11 | $  131,192.89 |

Payment Schedule:

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 1 | $  737.76 | 07/10/2009 |
| 239 | $  545.67 | MONTHLY BEGINNING  08/10/2009 |

**Security:** If checked, Borrower is giving a security interest in:
[X] Real Property
[ ] Mobile Home or Manufactured

**Late Charge:** If a payment is more than 15 days late, Borrower will be charged a late charge of the greater of $ 20.00 or 10.0 % of the payment amount

**Prepayment:** If Borrower pays off early, Borrower [X] will not [ ] may  have to pay a penalty, and will not be entitled to a refund of part of the finance charge.

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL | APPLICATION FEE | DATE CHARGES BEGIN |
|---|---|---|---|
| $  804.86 | $  2,197.43 | $  1,520.32 | 05/28/2005 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: | | |
|---|---|---|---|---|
| $  36.80 | $  438.76 | SINGLE CREDIT LIFE | _Shryl A Martin_ | 5/22/09 |
| $  30.30 | $  363.55 | SINGLE CREDIT DISAB | First Borrower's Signature | Date |
| NONE | | | Second Borrower's Signature | Date |

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made. Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1)  the Lender's receipt of Borrower's written request for termination;
(2)  on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3)  termination pursuant to the provisions of the insurance certificate;
(4)  payment in full of Borrower's Loan;
(5)  death of Borrower.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the Agreed Rate of Interest of  11.19  % per annum Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A month anniversary of the Date of Loan shown above, the Agreed Rate of Interest shall decrease to  N/A  % per annum on the unpaid Principal balance until the balance is paid in full.

Any amount shown above as an Application Fee is considered a prepaid charge and is in addition to interest at the agreed rates. In the event of prepayment of the loan, this Fee will not be refundable to Borrower.

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Borrower's Initials: _SAM_

PA 25424-14  11/2008          Original  (Branch)     Copy  (Customer)                    Page 1 of 3

Exhibit "A"



SHRYL A. MARTIN                                          212902          05/22/2009

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal); (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at either the maximum rate permitted by the then applicable law or the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement.

LATE CHARGE: If any installment is paid more than 15 days after the scheduled payment date, Borrower agrees to pay a late charge of the greater of $   20.00 or  10.0% of the installment amount. Lender may, at its option, waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment.

PREPAYMENT:

[X] If this box is checked, Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or the date of subsequent scheduled payments the on the loan, but may reduce the number of such payments.

[ ] If this box is checked and Borrower prepays the entire outstanding Principal amount of this loan during the first three (3) years from the date of this loan, Lender may charge Borrower a prepayment penalty equal to a percentage of the amount prepaid as follows:  for prepayment in full within one year of the date of the loan, 3%; within two years, 2%; and within three years, 1%.  Upon partial prepayment, interest will continue to accrue on any remaining Principal balance.  Partial prepayment will not affect the amount or due date of subsequent payments on the loan, but may reduce the number of such payments.

SECURITY:  This loan is secured by a lien against the real property located at  1212 BROWNFIELD ROAD UNIONTOWN PA 15401
See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

INSURANCE:  If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

LOAN CHARGES:  If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT:  Borrower will be in default if he does not make any scheduled payment on time or fails to comply with the provisions of any mortgage on the real property which secures this loan. If Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once.  Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement.  As permitted by the Secondary Mortgage Loan Act, Borrower agrees to pay actual and reasonable attorney's fees, court costs, and other actual and reasonable costs incurred in foreclosing on the real property securing this loan.  Borrower will receive written notice at least 30 days prior to foreclosure.

LAW THAT APPLIES:  Pennsylvania law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

RETURNED CHECK FEE:  Lender may charge a fee, not to exceed $  20.00 if a check, negotiable order of withdrawal or share draft is returned for insufficient funds or insufficient credit.

OTHER TERMS:  Where the context requires, singular words may be read in the plural and plural words in the singular, and references to the masculine gender may be read to apply to the feminine gender.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

REFINANCING:  The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.


(Intentionally left blank)

Exhibit "A"

SHRYL A MARTIN                               212902         05/22/2009

AUTHORIZATION TO USE CREDIT REPORT: By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked. ☐

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESSES:                                  SIGNED:

_____                     _____ (Seal)
                                            SHRYL A MARTIN          -Borrower
                                            _____ (Seal)
                                                                    -Borrower
                                            _____ (Seal)
                                                                    -Borrower
                                            CITIFINANCIAL SERVICES, INC.
_____                     By:_____
                                            (Name and Title)    05/22/2009  16:24:24

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal)  _____        _____ (Seal)  _____
Signature                Date           Signature                Date

Exhibit "A"

## CERTIFICATE OF SERVICE

I certify that on this date I caused copies of the foregoing papers to be served on the person(s) listed below by via regular mail.

Joespeh E. Culleiton, Esq.
Blank Rome, LLP
Union Trust Building
501 Grant Street, Ste 850
Pittsburgh, PA 15219

Counsel for Bayview Loan Servicing, LLC,

CIGNA GROUP INSURANCE
Cigna Corporate Headquarters
900 Cottage Grove Road
Bloomfield, CT 06002

AMERICAN HEALTH AND LIFE INSURANCE COMPANY
3001 Meacham Blvd. Suite 100
Fort Worth, TX 76113-2548

Defendants.

CITIFINANCIAL SERVICES, INC.
2 Court Square
Long Island City, NY 11101

Additional Defendant.

       /s/ David M. Kobylinski
       DAVID M. KOBYLINSKI

September 1, 2017