## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHRYL MARTIN, on behalf of herself and others similarly situated, | ) ) ) | CIVIL ACTION |
| Plaintiff, | ) ) ) | NO.  2:17-cv-01276-DSC |
| v. | ) ) ) | **CLASS ACTION** |
| | ) ) | **JURY TRIAL DEMANDED** |
| LIFE INSURANCE COMPANY OF NORTH AMERICA (d/b/a CIGNA), AMERICAN HEALTH AND LIFE INSURANCE COMPANY, BAYVIEW LOAN SERVICING, LLC, AND CITIFINANCIAL SERVICES, INC. | ) ) ) ) ) ) | |
| Defendants. | | |

### FIRST AMENDED CLASS ACTION COMPLAINT

NOW COMES Plaintiff Shryl Martin, individually and on behalf of the Class described below to make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### PARTIES AND VENUE

1.      Shryl Martin is an adult citizen of Pennsylvania who resides at 1212 Brownfield Road, Uniontown, PA 15401.

2.      CitiFinancial Services, Inc. ("CitiFinancial") is a New York corporation with its principal place of business located at 2 Court Square, Long Island City, NY 11101.

3.      Bayview Loan Servicing, LLC, d/b/a Bayview ("Bayview"), is a Forida company, with its principal place of business located at 4435 Ponce de Leon Boulevard, Suite 500, Coral Gables, FL 33146.

4.      Life Insurance Company of North America ("LINA"), which does business under the fictitious name Cigna, is a Connecticut insurance company licensed to do business in Pennsylvania with its principal place of business located at 900 Cottage Grove Road, Bloomfield CT 06002.

5.      American Health and Life Insurance Company ("American Health") is a Texan insurance company licensed to do business in Pennsylvania with its principal place of business located at 3001 Meacham Boulevard, Suite 100, Fort Worth, TX 76113-2548.

6.      Jurisdiction is appropriate in this Court as defendants have removed the same as the result of federal questions that were raised.

## MATERIAL FACTS AS TO THE CLASS ACTION

7.      On or around May 22, 2009, Plaintiff obtained a mortgage secured loan on her residence from CitiFinancial. A copy of the Disclosure Statement, Note and Security Agreement is attached hereto as Exhibit "A".

8.      As part of her loan agreement, plaintiff purchased credit life insurance and credit disability insurance from American Health. American Health is a wholly owned subsidiary of CitiFinancial. At this time, Plaintiff is not in possession of the insurance contract she entered into with American Health and is unable to attach a copy of the same to this pleading.[1]

9.      Officers and/or employees of CitiFinancial recommended this credit life and disability insurance to Plaintiff, assisted her in obtaining the same, and handled all paperwork for the formation of the policy.

10.      Literature referring to the credit life and credit disability insurance was produced and provided to Plaintiff by officers and/or employees of CitiFinancial. CitiFinancial would

---

[1]  Defendants have attached a contract that they purport to be the insurance agreement to previous filings.

thereafter direct Plaintiff and other insureds of American Health to direct questions and requests regarding credit insurance to officers and/or employees of CitiFinancial.

11.     Upon information and belief, CitiFinancial's officers and/or employees received financial compensation and/or other rewards when loan customers of CitiFinancial purchased credit life and/or credit disability insurance.

12.     In fact, the credit insurance programs that CitiFinancial offered to its customers through its wholly owned subsidiaries would be in fact administered and managed by CitiFinancial and/or its officers, employees and agents.

13.     As to the credit disability insurance, plaintiff paid an initial credit disability insurance premium in the amount of $30.30 per month.

14.     In exchange for the monthly premium CitiFinancial and American Health promised to provide Plaintiff with disability insurance for a maximum period of sixty (60) months. In other words, under the terms of the disability insurance agreement, were Plaintiff to become disabled, she would not have to make mortgage payments for five (5) years.

15.     On or around October 27, 2012, Plaintiff became disabled. Her disability credit insurance policy was subsequently approved. American Health and CitiFinancial thereafter became obligated to service Plaintiff's mortgage until or around May 2018.

16.     On or around January 5, 2015, American Health advised Plaintiff that it was terminating the Credit Life and Disability Insurance programs that it had offered through CitiFinancial. American Health advised, however, that claims that had been approved previously to the termination date, such as Plaintiff's, would not be affected by the termination.

17.     CitiFinancial advised Plaintiff that she would not have to make payments on her mortgage, per the terms of the credit disability insurance, until May 2018.

18.     CitiFinancial in fact agreed to pay Plaintiff's credit insurance premiums going forward.

19.     Prior to September 2015, CitiFinancial sold and/or assigned Plaintiff's mortgage to Bayview.

20.     Bayview's purchase of Plaintiff's mortgage did not affect Plaintiff's terms and obligations under the mortgage and credit insurance agreement she entered into with CitiFinancial and American Health.

21.     Bayview initially honored the period of disability promised to Plaintiff by CitiFinancial and American Health. Bayview advised Plaintiff that she would not be required to make mortgage payments until or around May 2018.

22.     In or around July 2016, Bayview demanded that Plaintiff begin making monthly mortgage payments herself beginning in October 2016.

23.     Plaintiff advised Bayview that her period of disability had not yet expired as had been promised to her by both CitiFinancial and American Health.

24.     Bayview nonetheless continued to attempt to collect monthly mortgage payments from Plaintiff and threatened to initiate foreclosure proceedings against her.

25.     In addition, Bayview embarked on a campaign of harassment against Plaintiff that caused her great shame and emotional injury.

26.     For example, Bayview posted or caused to be posted a notice on the door of Plaintiff's neighbor that falsely stated that she was in default on her mortgage.

27.     As a result of Bayview's threats to initiate foreclosure as well as its harassing behavior, Plaintiff was forced to renew making mortgage payments at new and more unfavorable terms than she had prior to the onset of her disability.

28.     Prior to the time CitiFinancial sold or assigned Plaintiff's loan to Bayview, CitiFinancial knew or should have known that Bayview would insist upon collecting monthly payments from Plaintiff during the period of disability.

29.     Prior to the time Bayview purchased Plaintiff's loan, Bayview knew or should have known that Plaintiff was not required to make monthly payments on the mortgage until or around May 2018.

30.     Plaintiff believes and therefore avers that a large number of other persons are similarly situated in that:

a)      they had obtained a mortgage secured loan from CitiFinancial;

b)      obtained credit disability insurance from American Health or another subsidiary of CitiFinancial through CitiFinancial's recommendation and assistance;

c)      became disabled only to have their mortgages sold and/or assigned to other loan servicing companies, such as Bayview; and

d)      thereafter faced demands from the loan servicing companies to which their loans were sold and/or assigned to make payments on the loan because CitiFinancial and its subsidiaries, ceased making payments during the benefit period of their credit disability insurance.

## CLASS ACTION ALLEGATIONS

31.     Description of the Class and Sub-Class: Plaintiff brings this Class action on behalf of herself and a Class defined as follows:

All natural persons within the United State of America who: (1) have obtained a mortgage-secured loan from CitiFinancial and/or one of its subsidiaries; (2) have purchased credit disability insurance from American Health and/or another subsidiary of CitiFinancial; (3) who became disabled prior to their loan being sold by CitiFinancial; and (4) who have since faced demands for mortgage payments

during the benefit period of their credit disability insurance. Members of this Class can be identified by records maintained by defendants.

Plaintiff brings this action on behalf of herself and a <u>Sub-Class</u> defined as follows:

> All natural persons within the Commonwealth of Pennsylvania who: (1) have obtained a mortgage-secured loan from CitiFinancial and/or one of its subsidiaries; (2) have purchased credit disability insurance from American Health and/or another subsidiary of CitiFinancial; (3) who became disabled prior to their loan being sold and/or by CitiFinancial; and (4) who have since faced demands for mortgage payments during the benefit period of their credit disability insurance. Members of this Class can be identified by records maintained by defendants.

32.	Excluded from the Class and Sub-Class are Defendants' officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class and Sub-Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

33.	<u>Numerosity</u>: The proposed Class and Sub-Class are so numerous that individual joinder of all members is impracticable.

34.	<u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Class and Sub-Class, and those questions substantially predominate over any questions that may affect individual Class and Sub-Class members. Common questions of fact and law include:

(a)	whether Bayview is unlawfully attempting to collect monthly mortgage payments in breach of the contracts entered into with CitiFinancial and/or its wholly owned credit insurance subsidiaries;

(b)	whether Bayview defamed the Class by inaccurately reporting that they were delinquent on mortgages;

(c)      whether Bayview, CitiFinancial and/or American Health have violated the Truth in Lending Act (15 U.S.C. § 1601 *et seq.*) by causing the Class to incur higher mortgage costs than originally agreed to;

(d)      whether Bayview, CitiFinancial and/or American Health have engaged in bad faith insurance practices prohibited by law;

(e)      whether Bayview, CitiFinancial and/or American Health have breached the credit disability insurance applications entered into by the Class with CitiFinancial and/or its wholly owned credit insurance subsidiaries;

(e)      should the running of the statute of limitations for the Class's claims be equitably tolled.

35.      <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class. Plaintiff and all members of the Class and Sub-Class have been similarly affected by illegal collection tactics by the Defendants.

36.      <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class and Sub-Class. Plaintiff has retained counsel with experience in prosecuting complex and Class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and Sub-Class, and have the financial resources to do so.

37.      <u>Superiority of Class Action</u>: Plaintiff and the members of the Class and  Sub-Class  suffered, and will continue to suffer harm as a result of Defendants' unlawful and wrongful conduct. A Class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class and Sub-Class is impractical. Even if individual Class members had the resources to pursue individual

litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The Class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The conduct of this action as a Class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members.

### Count 1 - CLASS ACTION - Breach of Contract

### Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. CitiFinancial, Bayview and American Health

38.     The foregoing paragraphs are incorporated herein as if set forth at length.

39.     Plaintiff and others similarly situated entered into mortgage secured loan with CitiFinancial in which they received a loan secured by their residence in return for which they were to make monthly payments of principal, interest and other amounts.

40.     Plaintiff and others similarly situated entered into credit disability insurance contracts with American Health or other subsidiaries of CitiFinancial involving mortgage secured loans from CitiFinancial.

41.     Under the terms of the credit disability insurance contracts, in exchange for a monthly premium, CitiFinancial and American Health promised to service Plaintiffs' mortgage for a defined period in the event Plaintiffs became disabled.

42.     Plaintiff and others similarly situated became disabled and thereafter American Health or another subsidiary of CitiFinancial became obligated to make mortgage payments on behalf of Plaintiff and others similarly situated.

43.     Sometime in or around January 2015, American Health ceased underwriting credit insurance for loans issued by CitiFinancial. American Health represented that the cancellation would not affect any insurance claims that had already been approved.

44.     CitiFinancial thereafter confirmed to persons who were eligible for disability insurance benefits from American Health they were not responsible for payments for the length of time associated with their disability insurance.

45.     Sometime in, around or prior to September 2015, CitiFinancial sold or assigned its mortgage-secured loans to loan servicing companies, such as defendant Bayview.

46.     CitiFinancial, American Health or other subsidiaries of CitiFinancial thereafter ceased making disability payments on the loans that were sold and/or assigned.

47.     In October 2016, Bayview demanded that Plaintiff resume making monthly payments on the mortgage.

48.     Plaintiff believes and therefore avers that others similarly situated face or have faced similar demands to resume servicing their mortgages despite their remaining within the benefit period of their credit disability insurance policy.

49.     Plaintiff should not have been required to resume making mortgage payments until or around May 2018.

50.     Under the terms of the credit disability insurance policy, American Health is obligated to make payment of premiums to CitiFinancial and/or its assign for the period set forth in its policies with Plaintiff and others similarly situated.

51.     American Health's failure to make such payments constitutes a breach of its insurance contract.

52.     At the time Bayview purchased the loans from CitiFinancial, Bayview knew or should have known that it was assuming mortgages for which no payments were due from the borrowers during the period of disabiliy.

53.     Bayview nonetheless thereafter engaged in a campaign of collecting payments from disabled borrowers who were not obligated to service their mortgages, and dunning them when they did not service the same.

54.     CitiFinancial's and/or Bayview's refusal to abide by the terms of the mortgage contract as it existed between Plaintiff and CitiFinancial likewise constitutes a breach of contract.

55.     Wherefore, Plaintiffs and the Class request an award of damages, statutory interest, court costs and attorneys' fees.

## Count 2 - CLASS ACTION - Bad Faith Insurance

### Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. American Health and CitiFinancial

56.     The foregoing paragraphs are incorporated herein as if set forth at length.

57.     At all times relevant herein defendants CitiFinancial and American Health acted as insurers by dealing directly with Plaintiff and the Class and Sub-Class on behalf of associated companies to provide disability insurance and/or administer benefits associated with disability insurance policies.

58.     Plaintiff and others who are similarly situated had disability insurance policies through CitiFinancial and American Health. Defendants denied benefits to Plaintiff and others similarly situated when they ceased to honor their obligations under the credit disability insurance contract as explained above.

59.     Under the terms of the insurance contract, Plaintiff and others who are similarly situated are entitled to credit disability benefits for the period of their disability.

60.     CitiFinancial, American Health or other subsidiaries of CitiFinancial have acted in bad faith in their handling of insurance contracts in that they have ceased to honor their obligations under the credit disability insurance contract resulting in Plaintiff, the Class and Sub-Class becoming obligated to resume making monthly service on their mortgages or face the threat of foreclosure.

61.     CitiFinancial, American Health and other subsidiaries of CitiFinancial further acted in bad faith and reckless disregard of their obligations to their insured by representing to the insured that their insurance benefits would be provided to them as agreed but by then selling their loans to persons, such as Bayview, who they knew or should have known would proceed in such a manner as to ensure their insureds would not receive the benefits of the insurance they purchased.

62.     CitiFinancial, American Health and other subsidiaries of CitiFinancial further have also acted in bad faith in general and through through the following particulars:

    a.     by failing to properly investigate, evaluate, negotiate and otherwise properly handle the claim;

    b.     knowing that Plaintiffs were disabled, they preyed on Plaintiffs and exploited their situation;

    c.     by engaging in improper, unfair, and unlawful claims handling and insurance practices which demonstrate bad faith;

    d.     by failing to objectively and fairly evaluate the claim;

    e.     by failing to give equal consideration to accepting the claim as denying the claim;

f.   by analogy, in violating the Pennsylvania Code requirements for proper insurance practices, including but not limited to 31 Pa. Code 146.6 and other code requirements in the Member Class States;

g.   by analogy, in failing to comply with the requirements of Pennsylvania's Unfair Insurance Practices Act and other code requirements in the Member Class States;

h.   by engaging in an adversarial relationship with Plaintiffs; and

i.   by requiring Plaintiffs to incur substantial counsel fees, and to institute suit to obtain the coverage for which Plaintiff had paid thereby deliberately and unwarrantedly delaying payment of the claim.

63.   Defendant's actions amount to a violation of 42 Pa.C.S. § 8371 in that it was aware that Plaintiffs are entitled to credit disability insurance benefits but has refused in bad faith to provide the same.

64.   Where members of the Class reside in jurisdictions other than the Commonwealth of Pennsylvania, and where Pennsylvania law is deemed not to apply, the actions of American Health and/or CitiFinancial constitute bad faith insurance practices under laws of the jurisdiction of said Class member.

65.   Wherefore, Plaintiffs and the Class request an award of damages, statutory interest, punitive damages, court costs and attorneys' fees.

**Count 3 - CLASS ACTION - Bad Faith Insurance**

**Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. Bayview**

---

66.     The foregoing paragraphs are incorporated herein as if set forth at length.

67.     Bayview assumed the obligations owed to Plaintiff and the Class by CitiFinancial, American Health and other subsidiaries of CitiFinancial when it purchased or assumed control of the loans, including the obligations owed to them in the context of being an insurer.

68.     Bayview then violated 42 Pa.C.S. § 8371 by thereafter engaging in a policy to deny insureds of the insurance benefits to which Bayview knew or should have known that they were entitled to by law. Bayview's actions were either intentional or done with a reckless disregard for the rights of the insureds.

69.     Bayview's actions amount to a violation of 42 Pa.C.S. § 8371 in that it was aware that Plaintiffs are entitled to credit disability insurance benefits but has refused in bad faith to provide the same.

70.     Where members of the Class reside in jurisdictions other than the Commonwealth of Pennsylvania, and where Pennsylvania law is deemed not to apply, the actions of Bayview constitute bad faith insurance practices under laws of the jurisdiction of said Class member.

71.     Wherefore, Plaintiffs and the Class request an award of damages, statutory interest, punitive damages, court costs and attorneys' fees.

## Count 4 - CLASS ACTION - DEFAMATION

### Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. Bayview

72.     The foregoing paragraphs are incorporated herein as if set forth at length.

73.     Bayview caused the credit report of Plaintiff to inaccurately show that she missed payments on her mortgage.

74.     Prior to causing these entries to appear on Plaintiff's credit reports, Bayview knew or should have known that CitiFinancial and/or American Health were responsible for servicing Plaintiff's Mortgage until May 2018.

75.     Bayview in fact recognized that payments were not due until May 2018 in its initial correspondence with Plaintiff.

76.     Upon information and belief, Bayview caused similar false reports of mortgage delinquency to appear on the credit reports of members of the Class and Sub-Class.

77.     Bayview's actions have caused Plaintiff, the Class and the Sub-Class to incur substantial amounts of harm, including:

      a)     loss of economic opportunity as a result of bad credit score;

      b)     incurring higher interest rates as a result of a bad credit score;

      c)     loss of ability to obtain necessary credit for household and family needs;

      d)     loss of credit opportunity;

      e)     emotional distress as the result of having bad credit; and

      f)     dignitary harm for having the stigma of bad credit or being financially irresponsible.

78.     Wherefore, Plaintiff, the Class and Sub-Class request an award of damages and punitive damages.

**Count 5 - CLASS ACTION - VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, et seq.**

**Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. Bayview**

79.     The foregoing paragraphs are incorporated herein as if set forth at length.

80.     Bayview caused the credit report of Plaintiff to inaccurately show that she missed payments on her mortgage.

81.     Prior to causing these entries to appear on Plaintiff's credit reports, Bayview knew or should have known that CitiFinancial and/or American Health were responsible for servicing Plaintiff's Mortgage until May 2018.

82.     Bayview in fact recognized that payments were not due until May 2018 in its initial correspondence with Plaintiff.

83.     Upon information and belief, Bayview caused similar false reports of mortgage delinquency to appear on the credit reports of members of the Class and Sub-Class.

84.     Bayview's actions amount to a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

85.     Bayview's actions have caused Plaintiff, the Class and the Sub-Class to incur substantial amounts of harm, including:

    a)     loss of economic opportunity as a result of bad credit score;

    b)     incurring higher interest rates as a result of a bad credit score;

    c)     loss of ability to obtain necessary credit for household, business and family needs;

    d)     loss of credit opportunity;

    e)     emotional distress as the result of having bad credit; and

f)      dignitary harm for having the stigma of bad credit or being financially

irresponsible.

86.      Wherefore, Plaintiff, the Class and Sub-Class request an award of damages as

permitted by law, interest, court costs  as well as an award of attorneys' fees.

## Count 6 - CLASS ACTION - VIOLATION OF THE TRUTH-IN-LENDING ACT

### Shryl Martin, on behalf of herself, the Class and the Sub-Class, v. CitiFinancial, American Health and Bayview

87.      The foregoing paragraphs are incorporated herein as if set forth at length.

88.      The Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, required CitiFinancial and

American Health to disclose to Plaintiff the true amount of finance charges she would incur

under the mortgage secured loan she entered into with the same, which is attached hereto as

Exhibit "A".

89.      The finance charges represented to Plaintiff by CitiFinancial and American Health

were not accurate in that the amount quoted as a disability insurance premium was not in effect

an insurance premium as CitiFinancial and American Health failed to provide the associated

insurance.

90.      Upon information and belief, this misrepresentation of finance charges occurred

not only to Plaintiff but to members of the Class and Sub-Class.

91.      Although the disclosures that were made to Plaintiff and the Class were made at

the time the policies and loans were entered into, Plaintiff and the Class were unable and without

means to determine that the disclosures were not accurate and were in fact misleading until their

claims for insurance coverage were denied.

92.     Bayview, as an assignee of the mortgage-secured loan, was obligated to charge Plaintiff, the Class and Sub-Class only the finance charges disclosed to them by CitiFinancial and American Health.

93.     The actions of CitiFinancial, American Health and Bayview caused Plaintiff, the Class and the Sub-Class substantial actual damages in that they were required to make payments during the period of disability that they should not otherwise have been required to make.

94.     Plaintiff was threatened with foreclosure and loss of her home over the same.

95.     Upon information and belief, other members of the Class and Sub-Class received similar threats as well.

96.     Wherefore, Plaintiff, the Class and Sub-Class request an award of damages as permitted by law, interest, court costs  as well as an award of attorneys' fees.

### Count 7 - INDIVIDUAL ACTION - ERISA § 502(a)(1)(B), 503

### Shryl Martin, on behalf of herself only, v. LINA (d/b/a CIGNA)

97.     Prior to October 27, 2012, Plaintiff was employed with Aldi, Inc. as a cashier.

98.     As part of her employment benefits with Aldi, Inc., plaintiff was provided a short-term and long-term disability policy through LINA (d/b/a Cigna).

99.     Plaintiff became disabled on or around October 27, 2012.

100.     LINA (d/b/a Cigna) determined Plaintiff was disabled under the terms of its short-term disability policy on or around November 29, 2012.

101.     LINA (d/b/a Cigna) thereafter continued to renew Plaintiff's short-term disability benefits until or around March 19, 2013. At this time LINA (d/b/a Cigna) informed plaintiff that they were evaluating her claim for long-term disability benefits.

102.     LINA (d/b/a Cigna) approved Plaintiff for long-term disability benefits on May 2, 2013.

103.     Prior to May 20, 2015, LINA (d/b/a Cigna) informed Plaintiff that she was no longer eligible for long-term disability benefits. Plaintiff appealed the decision, which LINA denied on or around May 20, 2015.

104.     LINA (d/b/a Cigna) determined Plaintiff was capable of employment in spite of Plaintiff providing LINA with medical evidence that she was not capable of the same.

105.     Plaintiff is not capable of employment and remains eligible for long-term disability benefits per the terms of LINA's policy.

106.     LINA's denial of her claim was arbitrary and capricious.

107.     LINA's administrators further failed to fully and fairly review Plaintiff's claim for benefits, and provided her with a written denial that was unclear and deficient.

108.     Plaintiff exhausted all of her administrative requirements under the plan, including its appeal process.

109.     In denying Plaintiff's claim for benefits, LINA's adminstrators failed to comply with the plan's procedural requirements and acted in bad faith toward Plaintiff.

110.     Wherefore, Plaintiff requests an award of damages as permitted by law, interest, court costs  as well as an award of attorneys' fees.

**Count 8 - CLASS ACTION - Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law**

**Shryl Martin, on behalf of herself  and the Sub-Class, v. CitiFinancial and American Health**

111.    Plaintiff incorporates by reference the preceding paragraphs.

112.     Defendants made promises through their policies and documentation stating that the credit disability insurance that they provided was of a certain quality and that its insurance benefits would be available in case Plaintiff and the Sub-Class became disabled.

113.    Defendants specifically represented to Plaintiff and the Sub-Class as follows:

- that Plaintiff and the Sub-Class would "[k]now that benefits are payable after you have been off work and under a doctor care for 7 to 30 days due to a qualified disability";

- that Plaintiff and the Sub-Class would "[g]ain comfort knowing that the monthly benefit amount can cover the entire scheduled monthly payment of [their] loan";

- that Plaintiff and the Class could "[h]ave confidence knowing [their] monthly loan payment can be paid for [them] for a period up to 60 months"; and

- that Plaintiff and the Sub-Class could "[e]njoy the convenience of paying [their] premium with [their] monthly loan payment".

114.    Defendants knew or should have known that their methods of bundling and selling mortgages rendered these promises false and misleading. These promises confused and misled Plaintiff and the Sub-Class and were tantamount to fraudulent misrepresentations and/or fraud in the inducement.

115.    Although the representations that were made to Plaintiff and the Sub-Class were made at the time the policies were purchased, Plaintiff and the Sub-Class were unable to determine that the policies lacked the advertised characteristics until their claims for coverage were denied.

116.   The insurance benefits promised by these two defendants did not match up with the insurance provided to Plaintiff and the Sub-Class. These deceptive promises and guarantees were false when made and were made by the Defendants knew or should have known the same.

117.   Plaintiff and members of the Sub-Class relied on the representations of the Defendants as evidenced by their acceptance of benefits that were paid following their disability claims.

118.   The foregoing misrepresentations regarding credit disability insurance were deceptive and caused Plaintiff and the Plaintiff's Sub-Class members to suffer monetary damages.

119.   The aforesaid misrepresentations and conduct violated the Unfair Trade Practices and Consumer Protection law 73 P.S. § 201-2(4) (v), (vii), (xiv), (ix) and (xxi) by:

(a)   Representing that services have characteristics uses, benefits that they do not have;

(b)   Representing that services are of a particular standard, quality if they are of another;

(c)   Failing to comply with the terms of any written guarantee or warranty given at, prior to, or after a contract for the purchase of is made;

(d)   Advertising services with intent not to sell them as advertised;

(e)   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

120.   As a result of the conduct set forth above, Plaintiff and the Sub-Class members have suffered damages through these two Defendants' failure to provide the credit disability insurance advertised. Plaintiffs seek as award of damages for the same including interest, attorney fees, litigation expenses and seek all statutory damages under the UTPCPL including treble damages.

**PRAYER FOR RELIEF**

121.    Plaintiff incorporates by reference the preceding paragraphs.

122.    WHEREFORE, Plaintiff respectfully prays for relief as follows;

    A.    That an order be entered certifying the proposed Class and Sub-Class and appointing Plaintiff and her counsel to represent the Class and Sub-Class;

    B.    That judgment be entered against each Defendant for all damages as allowed by law;

    C.    That punitive damages be awarded to Plaintiff, the Class and Sub-Class and against each Defendant as appropriate by law;

    D.    That the purchase money loans associated with each mortgage-secured loan be rescinded and that Defendants be disgorged of the benefits that they have received from Plaintiff and the Class;

    e.    That the Court award costs and reasonable attorneys' fees

**TRIAL BY JURY DEMANDED FOR ALL COUNTS**

    Respectfully submitted,

    **PRAETORIAN LAW GROUP, LLC**

    _____/s/ David M. Kobylinski_____
    David M. Kobylinski, Esquire
    Peter T. Kobylinski, Esquire
    515 Court Place, Ste 4
    Pittsburgh, PA 15219

Dated: December 1, 2017