# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHRYL MARTIN,                                   :
                                                :       CIVIL ACTION
                  Plaintiff,    :
                                                :       NO. 2:17-cv-01276-DSC
    v.                                          :
                                                :
CIGNA GROUP INSURANCE, AMERICAN                 :
HEALTH AND LIFE INSURANCE COMPANY, :
BAYVIEW LOAN SERVICING, LLC and                 :
CITIFINANCIAL SERVICES, INC.,                   :
                                                :
              Defendants     :
                                                :

## MEMORANDUM OF LAW OF DEFENDANTS CITIFINANCIAL SERVICES, INC. AND AMERICAN HEALTH AND LIFE INSURANCE COMPANY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I, II, VI AND VIII OF THE AMENDED COMPLAINT

Martin C. Bryce, Jr. (No. 59409)
bryce@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
215.864.8238

*Attorneys for Defendants CitiFinancial Services, Inc. and American Health and Life Insurance Company*

Of Counsel:
Courtney L. Yeakel
yeakelc@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
215.864.8206


Dated:  January 12, 2018

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................... 1

II.  FACTUAL ALLEGATIONS ................................................................................... 3

    A.   ALLEGATIONS COMMON TO THE ORIGINAL COMPLAINT AND THE AMENDED COMPLAINT ..................................................................... 3

    B.   THE NEW ALLEGATIONS OF THE AMENDED COMPLAINT ...................... 4

III. ARGUMENT .......................................................................................................... 5

    A.   Legal Standard. ................................................................................................ 5

    B.   Plaintiff Fails To State A Claim Against CitiFinancial And AHL For Breach Of Contract. ........................................................................................ 5

    C.   Plaintiff Fails To State A Claim Against CitiFinancial And AHL For "Bad Faith Insurance." .................................................................................. 9

        (a)   CitiFinancial Is Not An "Insurer" Who Can Be Held Liable For Alleged Violations Of Pennsylvania's "Bad Faith" Statute. ..................... 9

        (b)   Plaintiff Has Failed To Plead The Elements Of A "Bad Faith" Claim Against CitiFinancial Or AHL. ................................................. 12

    D.   Plaintiff's Claim For Alleged Violations Of TILA Is Time-Barred And Otherwise Fails To State A Claim. ................................................................. 15

        (a)   The TILA Claim Is Time-Barred On Its Face. ....................................... 15

        (b)   Plaintiff Has Not Adequately Pled A Violation Of TILA. ...................... 18

    E.   Plaintiff Fails To Plead A Claim Against CitiFinancial And AHL For Alleged Violations Of The UTPCPL. .............................................................. 22

        (a)   The UTPCPL Claim Is Time-Barred. .................................................... 22

        (b)   The UTPCPL Does Not Apply To Ongoing Contractual Representations In The Insurance Context. ............................................. 23

        (c)   Plaintiff Fails To Plead Facts Demonstrating Any Violation Of The Enumerated Subsections of Section 201-2(4) Of The UTPCPL. ............. 25

        (d)   Plaintiff Fails To Plead A Violation Of The UTPCPL's "Catchall Provision." ........................................................................................... 25

        (e)   Plaintiff's UTPCPL Claim Is Barred By The "Gist Of The Action" Doctrine. .............................................................................................. 29

        (f)   Plaintiff's UTPCPL Claim Is Barred By The "Economic Loss" Doctrine. .............................................................................................. 30

IV.  CONCLUSION ...................................................................................................... 32

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................5, 8, 15, 25

*Atiyeh v. Nat'l Fire Ins. Co. of Hartford*,
    742 F. Supp.2d 591 (E.D. Pa. 2010) .....................................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................5

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capita Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006) ....................................................................................15

*Benner v. Bank of American, N.A.*
    917 F. Supp.2d 338 (E.D. Pa. 2013) .....................................................................29

*Cada v. Baxter Healthcare Corp.*,
    920 F.2d 446 (7th Cir. 1990) .............................................................................17, 18

*Castrol, Inc. v. Pennzoil Company*,
    987 F.2d 939 (3d. Cir.1993) ...................................................................................27

*Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*,
    123 F. Supp.2d 826 (E.D. Pa. 2000) .....................................................................29

*Del. Valley Home Evaluations, Inc. v. Housemaster of Am.*,
    559 F. Supp.2d 591 (E.D. Pa. 2008) .......................................................................9

*DeLuca v. CitiMortgage*,
    No. 11-3634, 2012 WL 32136 (D. N.J. Jan. 4, 2012)............................................18

*DiCicco v. Citizens Financial Group, Inc.*,
    No. 15-267, 2015 WL 5302767 (3d Cir. Sept. 10, 2015) ..................................6,7, 8

*Dumont v. Litton Loan Servicing, LP*,
    No. 12-CV-2677, 2014 WL 815244 (S.D.N.Y. March 3, 2014) ............................31

*Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*,
    193 F.3d 742 (3d Cir. 1999)....................................................................................13

*Garcia v. Wachovia Mortg. Corp.*,
    676 F. Supp.2d 895 (C.D. Cal. 2009) ................................................................... 18

*Gardner v. State Farm Fire & Cas. Co.*,
    544 F.3d 553 (3d Cir. 2008)....................................................................................26

ii

*Gibson v. Progressive Specialty Ins. Co.*,
   No. CIV.A. 1501038, 2015 WL 2337294 (E.D. Pa. May 13, 2015) ........................................24

*Hampton v. Geico Ins. Co.*,
   759 F. Supp.2d 632 (W.D. Pa. 2010) ..................................................................................26

*Hedges v. United States*,
   404 F.3d 744 (3d Cir. 2005) ..................................................................................................16

*Hersh v. CitiMortgage, Inc.*,
   No. 2:13-CV-1344, 2013 WL 6858443 (W.D. Pa. Dec. 30, 2013) ........................................28

*Hover v. First Alliance Home Mortgage*,
   No. 12-111, 2012 U.S. Dist. LEXIS 29161 (D. N.J. March 6, 2012) ......................................16

*Hunt v. United States Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008) ..................................................................................................28

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ............................................................................................3, 5

*In re: Smalis*,
   No. 15-1474, 2016 WL 1639673 (W.D. Pa. Bankr. April 26, 2016) ......................................18

*Irwin v. Dep't of Veteran Affairs*,
   498 U.S. 89 (1990) ................................................................................................................17

*Jones v. ABN AMRO Mortg. Group., Inc.*,
   606 F.3d 119 (3d Cir. 2010) ..................................................................................................29

*Jones v. Morton*,
   195 F.3d 153 (3d Cir. 1999) ..................................................................................................16

*Kaymark v. Bank of Am., N.A.*,
   783 F.3d 168 (3d Cir. 2015) ...............................................................................................6, 8

*Kelley v. Mortg. Elec. Registration Sys., Inc.*,
   642 F. Supp.2d 1048 (N.D. Cal. 2009) ................................................................................20

*Kelly v. Progressive Advanced Ins. Co.*
   159 F. Supp.3d 562 (E.D. Pa. 2016) ....................................................................................24

*Kliesh v. Select Portfolio Servicing, Inc.*,
   419 Fed. Appx. 268 (3d Cir. 2011) ......................................................................................18

*Kofsky v. Unum Life Ins. Co.*,
   No. 13-5647, 2014 WL 4375725 (E.D. Pa. Sept. 2, 2014) ................................................6, 12

*Krisa v. The Equitable Life Assur. Soc.,*
    109 F. Supp.2d 316 (M.D. Pa. 2000) .................................................................................15

*Lake v. Arnold,*
    232 F.3d 360 (3d Cir. 2000)...........................................................................................23

*Laychock v. Wells Fargo Home Mortg.,*
    No. 07-4478, 2008 WL 2890962 (E.D. Pa. July 23, 2008) ....................................17

*Levy v. Keystone Food Products,*
    No. 07-5502, 2008 WL 4115856 (E.D. Pa. Aug. 28, 2008) ....................................23

*Lindsey v. Chase Home Finance, LLC,*
    No. 3:CV-06-1220, 2006 WL 2524227 (M.D. Pa. Aug. 30, 2006) ........................11

*Lum v. Bank of America,*
    361 F.3d 217 (3d Cir. 2004)...........................................................................................17

*McGuckin v. Allstate Fire and Cas. Ins. Co.,*
    118 F. Supp.3d 716 (E.D. Pa. 2015) ......................................................................31

*Morilus v. Countrywide Home Loans, Inc.,*
    No. 07-0900, 2007 WL 1810676 (E.D. Pa. June 20, 2007)....................................19

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997)............................................................................................5

*Oshiver v. Levin, Fishbein, Sedran & Berman,*
    38 F.3d 1380 .........................................................................................................17, 23

*Papurello v. State Farm Fire & Cas. Co.,*
    144 F. Supp.3d 746 (W.D. Pa. 2015)...................................................................25, 27

*Payan v. GreenPoint Mortg. Funding, Inc.,*
    681 F. Supp. 2d 564 (D. N.J. 2010) ......................................................................20

*Pearson v. LaSalle Bank,*
    No. CIV.A. 08-2306, 2009 WL 1636037 (E.D. Pa. June 9, 2009).........................28

*Pizzini v. Am. Intern. Specialty Lines Ins. Co.,*
    249 F. Supp.2d 569 (E.D. Pa. 2003) ......................................................................13

*Podinback v. U.S. Postal Service,*
    409 F.3d 584 (3d Cir. 2005)...........................................................................................17

*Polselli v. Nationwide Mut. Fire Ins. Co.,*
    23 F.3d 747 (3d Cir. 1994).............................................................................................13

iv

*Powell v. Crawford & Co.,*
    No. C.A. 03-2182, 2003 U.S. Dist. LEXIS 20207 (E.D. Pa. Oct. 30, 2003)............................11

*Ridolfi v. State Farm Mut. Automobile Ins. Co.,*
    146 F. Supp.3d 619 (M.D. Pa. 2015) ...................................................................8, 14, 15, 31

*Robey-Harcourt v. Bencorp Financial Co., Inc.,*
    326 F.3d 1140 (10th Cir. 2003) ....................................................................................19

*Robinson v. Johnson,*
    313 F.3d 128 (3d Cir. 2002)..........................................................................................15

*Rocco v. J.P. Morgan Chase Bank,*
    255 Fed. Appx. 638 (3d Cir. 2007)................................................................................15

*Romero v. Allstate Property & Cas. Ins. Co.,*
    No. 16-4037, 2017 WL 895593 (E.D. Pa. March 7, 2017)..............................................23, 24

*Sarsfield v. CitiMortgage, Inc.,*
    707 F. Supp.2d 546 (M.D. Pa. 2010) ..............................................................................31

*Seldon v. Home Loan Servs.,*
    647 F. Supp. 2d 451 (E.D. Pa. 2009) ..............................................................................20

*Sicherman v. Nationwide Life Ins. Co.,*
    No. 11-7727, 2012 WL 1122737 (E.D. Pa. Apr. 4, 2012) ....................................................31

*Smith v. Fidelity Consumer Discount Co.,*
    898 F.2d 896 (3rd Cir. 1990) ........................................................................................21

*Smith v. State Farm Mut. Automobile Ins. Co.,*
    506 Fed. Appx. 133 (3d Cir. 2012)..................................................................................28

*Spruce Street Props., Ltd. v. Noblesse,*
    No. 2:09-cv-1405, 2011 U.S. Dist. LEXIS 105835 (W.D. Pa. Sept. 19, 2011)........................30

*Stamford, Inc. v. The Color Works, Inc.,*
    No. 94-6278, 1996 WL 557328 (E.D. Pa. Sept. 30, 1996) ....................................................28

*Taggart v. Norwest Mortg., Inc.,*
    No. 09-1281, 2010 WL 114946 (E.D. Pa. Jan. 11 2010)...................................................25,26

*Transp. Int'l Pool, Inc. v. Ross Stores, Inc.,*
    No. CIV. A. 06-1812, 2009 WL 1033601 (E.D. Pa. Apr. 15, 2009) .........................................6

*Tubman v. USAA Ins. Co.,*
    943 F. Supp.2d 525 (E.D. Pa. 2013) ...............................................................................31

v

*United States v. Clive,*
    No. 05-0383, 2008 WL 3889726 (W.D. Pa. Aug. 19, 2008)....................................16

*Werwinski v. Ford Motor Co.,*
    286 F.3d 661 (3d Cir.2002)...............................................................................30, 31

*West v. CUNA Mut. Ins. Soc.,*
    No. 11-1259, 2012 WL 527658 (W.D. Pa. Feb. 16, 2012)....................................13

*Williams v. EMC Mortg. Corp., Inc.,*
    No. 12-1215, 2013 WL 1874952 (E.D. Pa. May 3, 2013)................................18, 21

*Williams v. Nat'l School of Health Tech., Inc.,*
    836 F. Supp. 273 (E.D. Pa. 1993), *aff'd*, 37 F.3d 1491 (3d Cir. 1994)....................26

*Zeglenv. Northwestern Mutual Life Ins. Co.,*
    No. 3:14-cv-00173, 2014 WL 4215531 (M.D. Pa. Aug. 25, 2014) .........................31

STATE CASES

*1726 Cherry St. Partnership v. Bell Atl. Props., Inc.,*
    653 A.2d 663 (Pa. Super. 1995).............................................................................28

*Berkebile v. Brantly Helicopter Corporation,*
    462 Pa. 83, 337 A.2d 893 (1975)...........................................................................27

*Brown v. Everett Cash Mut. Ins. Co.,*
    157 A.3d 958 (Pa. Super. 2017)...............................................................................9

*eToll, Inc. v. Elias/Savion Advert., Inc.,*
    811 A.2d 10 (Pa. Super. 2002)...............................................................................29

*Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania,*
    985 A.2d 840 (Pa. 2009).......................................................................................31

*Huddleston v. Infertility Center of America,*
    700 A.2d 453 (Pa.Super.Ct.1997)..........................................................................27

*Keller v. Volkswagen of Am., Inc.,*
    733 A.2d 642 (Pa. Super. 1999).............................................................................22

*Rancosky v. Wash. Nat'l Ins. Co.,*
    2017 Pa. LEXIS 2286 (Pa. Sept. 28, 2017) ..................................................12, 13,14

*Sexton v. PNC Bank, N.A.,*
    792 A.2d 602 (Pa. Super. 2002), *appeal denied*, 814 A.2d 678 (Pa. 2002)..............29

*Southeastern Pennsylvania Transp. Auth. v. Holmes,*
    835 A.2d 851 (Pa. Commw. 2003) .......................................................................9, 11

DMEAST #32522050 v5

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
   854 A.2d 425 (Pa. 2004) ...........................................................................................25

**FEDERAL STATUTES**

15 U.S.C. § 1602(f) .....................................................................................................19

15 U.S.C. § 1640(e) .....................................................................................................15

**STATE STATUTES**

40 P.S. § 221.3 .............................................................................................................10

40 P.S. § 477b ..............................................................................................................10

42 P.S. § 5527 ..............................................................................................................22

42 P.S. § 8371 ...........................................................................................9, 10, 11, 12, 23

72 P.S. § 201-1, *et seq* ................................................................................................22

75 P.S. § 1702 .............................................................................................................10

**RULES**

Federal Rule of Civil Procedure 9(b) ..........................................................................17

Federal Rule of Civil Procedure 12(b)(6) ........................................................... *passim*

**REGULATIONS**

12 C.F.R. § 226.2(a)(17) .............................................................................................19

12 C.F.R. § 226.17(e) ..................................................................................................21

**OTHER AUTHORITIES**

*Black's Law Dictionary* 1157 (6th ed. 1990) ..............................................................10

Defendants CitiFinancial Services, Inc. ("CitiFinancial")[1] and American Health and Life Insurance Company ("AHL") (collectively, "Defendants"), hereby submit this Memorandum of Law in Support of their Motion to Dismiss Counts I (CLASS ACTION-Breach of Contract), II (CLASS ACTION-Bad Faith Insurance), VI (CLASS ACTION-Violation of TILA) and VIII (CLASS ACTION-Violation of UTPCPL) of the Amended Complaint filed by Plaintiff Shryl Martin ("Plaintiff" or "Martin"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

I. **INTRODUCTION**

In this putative class action, Plaintiff Shryl Martin ("Plaintiff" or "Martin") alleges that, in or around May 2009, she executed a mortgage in favor of CitiFinancial to secure a loan on real property. In connection with that mortgage loan, Plaintiff purchased Single Credit Life Insurance and Single Credit Disability Insurance from AHL. The Application for Group Credit Insurance executed by Plaintiff in connection therewith generally provided that, if Plaintiff became disabled while insured, AHL would pay the "lesser of [insured's] scheduled monthly [mortgage] payment" or the "Maximum Monthly Disability Benefit" provided in the policy, for a "maximum of 60 monthly payments." Martin allegedly became disabled on or around October 27, 2012, at which point she tendered a claim to AHL for coverage pursuant to the Credit Disability Insurance Benefit set forth in the Application. It is undisputed that the claim was approved by AHL and, thereafter, AHL made all of Plaintiff's mortgage payments to CitiFinancial pursuant to the terms of the Credit Disability Insurance Benefit. After the mortgage was "sold and/or assigned" to Defendant Bayview Loan Servicing, LLC ("Bayview") "prior to September 2015," Plaintiff alleges that Bayview failed to honor the terms of the Credit

---

[1] The loan at the center of this litigation was extended by CitiFinancial Services, Inc., a Pennsylvania corporation. On October 1, 2013, CitiFinancial Services, Inc. changed its name to CFNA Receivables (PA), LLC.

Disability Insurance Benefit by wrongfully demanding mortgage payments from Plaintiff, even though the disability period under the policy allegedly had not yet expired.

Based on the above, Plaintiff filed her original Complaint in this action. On November 10, 2017, CitiFinancial and AHL moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Instead of responding to the motion, Plaintiff filed an Amended Complaint on December 1, 2017, in which she reiterated the same causes of action against CitiFinancial and AHL, while adding a handful of conclusory new allegations in an effort to cure the deficiencies of the original Complaint.

The new "allegations" of the Amended Complaint consist of nothing more than legal conclusions and bald statements unsupported by any specific allegations of fact. They do not even approach the standard required to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Thus, the Amended Complaint fails to state a single legally-viable cause of action against either CitiFinancial or AHL because (i) all factual allegations of purported wrongful conduct are directed exclusively at Bayview (*i.e.,* not at CitiFinancial or AHL); and (ii) Plaintiff's claims are otherwise time-barred, legally barred or fail to plead the elements of the claims for breach of contract, "bad faith insurance," or violations of TILA or the UTPCPL. For these straightforward reasons, the claims against CitiFinancial and AHL set forth in Counts I, II, VI and VIII of the Amended Complaint should be dismissed with prejudice.[2]

---

[2] The remaining Counts of the Amended Complaint are not directed at CitiFinancial or AHL.

2

## II.   FACTUAL ALLEGATIONS[3]

### A.   ALLEGATIONS COMMON TO THE ORIGINAL COMPLAINT AND THE AMENDED COMPLAINT

On May 22, 2009, CitiFinancial extended to Plaintiff a loan in the amount of $50,527.11 (the "Loan") secured by a mortgage (the "Mortgage") on property located at 1212 Brownfield Road, Uniontown, Pennsylvania 15401.  (Compl. ¶ 1; Am. Compl. ¶ 7 and Exh. A (Disclosure Statement, Note and Security Agreement dated May 22, 2009 (the "Loan Agreement")).  AHL was not a party to the Loan Agreement.  (*See* Compl. & Am. Compl. Exh. A).

In connection with her execution of the Loan Agreement, Plaintiff purchased "Single Credit Life Insurance" and "Single Credit Disability Insurance" from AHL.  (Compl. ¶ 8; Am. Compl. ¶ 8).  A copy of the "Application for Group Credit Insurance" dated May 28, 2009 executed by Plaintiff (hereinafter, the "Disability Policy"), which the Court may properly consider on this Motion, is attached hereto as Exhibit 1.[4]  The Disability Policy generally provided that, if Plaintiff became disabled during the term of the policy, AHL would pay to the "Creditor Beneficiary," *i.e.*, CitiFinancial,  the "lesser of [Plaintiff's] scheduled monthly [mortgage] payment" or the "Maximum Monthly Disability Benefit" provided in the Policy.  *See* Exh. 1, pp. 1, 2 & 4.  The Disability Policy provided for a disability benefit "limited to a maximum of 60 monthly payments per occurrence of disability."  *Id.*, p. 1.

---

[3]   For purposes of this Motion only, Defendants accept as true only the well-pleaded factual allegations of the Amended Complaint.

[4]   Plaintiff alleges that "at this time, Plaintiff is not in possession of the insurance contract she entered into with [AHL] and is unable to attach a copy of the same...." (Am. Compl. ¶ 8).  The Court may consider the Disability Policy, which Defendants have properly attached hereto, because it is integral to the Plaintiff's claims, is relied upon throughout the Amended Complaint, and bears Plaintiff's signature. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

DMEAST #32522050 v5

Plaintiff alleges that, "[o]n or around October 27, 2012, [she] became disabled." (Compl. ¶ 11; Am. Compl. ¶ 15). As a result of her alleged disability, Plaintiff tendered a claim to AHL for coverage under the Disability Policy, which was "subsequently approved." (*Id.*).

According to the Amended Complaint, "[p]rior to September 2015, CitiFinancial sold and/or assigned Plaintiff's mortgage to Bayview." (Compl. ¶ 14; Am. Compl. ¶ 19). Plaintiff alleges that, subsequent to said transfer, Bayview failed to honor the terms of the Disability Policy and, instead, "demanded that Plaintiff begin making monthly mortgage payments" "in or around July 2016." (*Id.* ¶ 17; *Id.* ¶ 22). When Plaintiff allegedly "advised Bayview that her period of disability had not yet expired," Bayview nonetheless "continued to attempt to collect monthly mortgage payments from Plaintiff and threatened to initiate foreclosure proceedings against Plaintiff." (*Id.* ¶ 19; *Id.* ¶¶ 23, 24). Plaintiff alleges that, as the result of Bayview's alleged "threats," she was "forced to renew making mortgage payments at new and more unfavorable terms...." (*Id.* ¶ 22; *Id.* ¶ 27).

## B.   THE NEW ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff adds a handful of new averments to her Amended Complaint. First, she alleges that CitiFinancial "recommended," "administered" and "managed" the Disability Policy. (Am. Compl. ¶¶ 9-11). She also avers that, "upon information and belief," officers or employees of CitiFinancial purportedly "received financial compensation and/or other rewards" when loan customers of CitiFinancial" purchased credit life and/or credit disability insurance. (*Id.* ¶ 11). Finally, Plaintiff offers the following new allegations:

- "Defendants" made certain inflated statements about the benefits of disability insurance to Plaintiffs and "members of the Sub-Class," including that they could "gain comfort knowing that the monthly benefit amount can cover the entire schedule monthly payment of their loan," and "have confidence knowing [their] monthly loan payment can be paid for them." (*Id.* ¶ 113).

4

- • CitiFinancial in fact agreed to pay Plaintiffs [sic] credit insurance premiums going forward. (*Id.* ¶ 18).

- • Prior to the time CitiFinancial sold or assigned Plaintiffs [sic] loan to Bayview, CitiFinancial knew or should have known that Bayview would insist upon collecting monthly payments from Plaintiff during the period of disability. (*Id.* ¶ 28).

- • Although the [finance charge] disclosures that were made to Plaintiff and the Class were made at the time the policies and loans were entered into, Plaintiff and the Class were unable and without means to determine that the disclosures were not accurate and were in fact misleading until their claims for insurance coverage were denied. (*Id.* ¶ 91).

## III.   ARGUMENT

### A.   Legal Standard.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges whether the complaint states a claim upon which relief may be granted. In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record and documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to defeat a motion to dismiss, a plaintiff cannot rely on unsupported legal conclusions couched as factual allegations, or conclusory allegations devoid of any reference to actual events. *See, e.g., Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

### B.   Plaintiff Fails To State A Claim Against CitiFinancial And AHL For Breach Of Contract.

Count I of the Amended Complaint purports to state a claim against CitiFinancial and AHL – as well as against Defendant Bayview – for breach of the Disability Policy. As explained

DMEAST #32522050 v5

below, because Plaintiff does not (and cannot) sufficiently plead a breach of contract by CitiFinanical and AHL, Count I must be dismissed as to those Defendants.

To plead a claim for breach of contract under Pennsylvania law, Plaintiff must specifically allege: (1) the existence of a contract, including its essential terms; (2) a breach of contractual duty; and (3) resultant damages. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015). Plaintiff must "'allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond.'" *Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, No. CIV. A. 06-1812, 2009 WL 1033601, at *3 (E.D. Pa. Apr. 15, 2009). "If a complaint fails to sufficiently plead one of [the required] elements, the breach of contract claim should be dismissed." *DiCicco v. Citizens Financial Group, Inc.*, No. 15-267, 2015 WL 5302767, at *4 (E.D. Pa Sept. 10, 2015).

Although Plaintiff pleads the existence of contracts with CitiFinancial (the Loan Agreement) and AHL (the Disability Policy), she does not plead a breach of either contract by those Defendants. With respect to CitiFinancial, Plaintiff does not plead – even in a conclusory fashion – that CitiFinancial breached the Loan Agreement and, therefore, the contract claim with respect to CitiFinancial must be summarily dismissed. Further, Plaintiff cannot plead that CitiFinancial breached the Disability Policy, as CitiFinancial – the initial "Creditor-First Beneficiary" under the Disability Policy – was not a party thereto and, thus, owed no duties to Plaintiff thereunder. *See* Exh. 1. *See Kofsky v. Unum Life Ins. Co.*, No. 13-5647, 2014 WL 4375725, at *3 (E.D. Pa. Sept. 2, 2014) (dismissing claim against insurance broker because "Plaintiff has not alleged a contract between [the broker] and Plaintiff. There is no allegation that USI Affinity issued the Policy or that USI Affinity was a party to the Policy.").

6

Plaintiff's sole conclusory new allegation in the Amended Complaint apparently directed toward this claim – that "CitiFinancial in fact agreed to pay Plaintiffs [sic] credit insurance premiums going forward" (Am. Compl. ¶ 18) – does not cure Plaintiff's failure to plead a breach of contract by CitiFinancial.  First, Plaintiff fails to offer a single factual averment identifying the person who allegedly made such statement on behalf of CitiFinancial, to whom it was made, or when it was made.  This failure alone requires dismissal of the contract claim.  *See DiCicco, supra*, 2015 WL 5302767, at *4.  Finally, even assuming the truth of Plaintiff's allegation that CitiFinancial "agreed to pay" Plaintiff's disability premiums, that allegation does not change the fact that CitiFinancial was not a party to the Disability Policy and thus had no contractual obligation to pay Plaintiff's premiums.  To the contrary, as already explained, CitiFinancial was the initial "Creditor-First Beneficiary" under the Disability Policy and, therefore, owed no duties to Plaintiff thereunder.[5]

With respect to AHL, Plaintiff alleges only that, in 2015, AHL "ceased underwriting credit insurance for loans issued by CitiFinancial," and that Plaintiff was advised that such "would not affect any insurance claims [such as Plaintiff's] that had already been approved." (Am. Compl. ¶ 43; *see also* Am. Compl. ¶ 16).  Although AHL further "advised Plaintiff that it was terminating the Credit Life and Disability Insurance programs," it also "advised … that claims that had been approved previously to the termination date, such as Plaintiff's, would not be affected by the termination." (*Id.* ¶ 16).

Thus, Plaintiff does not plead any facts even suggesting that AHL breached the terms of the Disability Policy.  To the contrary, the only well-pled allegations indicate that AHL honored

---

[5]     The conclusion that CitiFinancial owed no contractual obligations to Plaintiff under the Disability Policy is underscored by the fact that, as a matter of law, CitiFinancial is not an "insurer" licensed to engage in the business of insurance.  *See* discussion, *infra*, at pp. 9 - 12.

7

the terms of the Disability Policy.  Indeed, the only factual allegations regarding any "breach" of the Disability Policy are directed at Bayview.  (*See* Am. Compl. ¶¶ 21-27 (Although "Bayview initially honored the period of disability promised to plaintiff by CitiFinancial and AHL," "in or around July 2016, Bayview demanded that Plaintiff begin making monthly mortgage payments," "threatened to initiate foreclosure proceedings," "embarked on a campaign of harassment against Plaintiff," all allegedly in contravention of the Disability Insurance Policy)).  And, although Plaintiff alleges generally that "CitiFinancial, [AHL] or other subsidiaries of CitiFinancial[6] thereafter ceased making disability payments on [unspecified] loans that were sold and/or assigned" (Am. Compl.¶ 46), such allegation is entirely conclusory, is not based on any factual averments, and cannot satisfy Plaintiff's burden to plead the elements of a breach of contract under *Iqbal*.  *See Ridolfi v. State Farm Mut. Automobile Ins. Co.*, 146 F. Supp.3d 619, 624 (M.D. Pa. 2015) (general allegations of breach of contract, not based on well pled facts, insufficient to survive a motion to dismiss).

In short, Plaintiff has not alleged – and cannot allege – facts demonstrating a breach of contract by CitiFinancial or AHL.  For this simple reason, the breach of contract claim in Count I must be dismissed as to CitiFinancial and AHL.  *See DiCicco*, 2015 WL 5302767, at *9 (dismissing breach of contract claim because plaintiffs failed to plead that the defendant in question breached the contract causing them damages; "breach of contract damages must be damages that actually resulted from the defendant's breach.") (citing *Kaymark*, 783 F.2d at 182)); *Ridolfi, supra*, 146 F. Supp. 3d at 624.

---

[6]      As already explained, *supra*, CitiFinancial and/or its unidentified subsidiaries had no obligation to pay Plaintiff's disability premiums because they were not parties to the Disability Policy by its express terms.

C.    **Plaintiff Fails To State A Claim Against CitiFinancial And AHL For "Bad Faith Insurance."**

Plaintiff also fails to state a claim in Count II against CitiFinancial and AHL for alleged violations of Pennsylvania's "Bad Faith" Statute, 42 P.S. § 8371, because (i) CitiFinancial is not an "insurer" subject to the statute; and (ii) Plaintiff fails to allege with particularity that AHL denied her benefits under the Disability Policy, much less that it did so with "reckless disregard," as required to state a claim.

(a)    **CitiFinancial Is Not An "Insurer" Who Can Be Held Liable For Alleged Violations Of Pennsylvania's "Bad Faith" Statute.**

Pennsylvania's "bad faith" insurance statute only applies to actions "arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured ...." 42 P.S. § 8371.  Consequently, a plaintiff cannot bring a claim under this statute unless the defendant is an insurance company that issued an insurance policy to plaintiff.  *See Brown v. Everett Cash Mut. Ins. Co.,* 157 A.3d 958, 968 (Pa. Super. 2017); *Southeastern Pennsylvania Transp. Auth. v. Holmes,* 835 A.2d 851 (Pa. Commw. 2003); *see also Del. Valley Home Evaluations, Inc. v. Housemaster of Am.,* 559 F. Supp.2d 591 (E.D. Pa. 2008).

In the seminal case of *Holmes,* the Commonwealth Court set forth the definitions to be used by courts in construing and determining the application of Section 8371 to a purported "bad faith" claim.  There, plaintiffs were passengers in a vehicle owned and operated by Southeastern Pennsylvania Transportation Authority ("SEPTA") when they sustained injuries in an accident.  Plaintiffs filed suit against SEPTA alleging, among other things, that SEPTA violated 42 P.S. § 8371 because SEPTA, a self-insured government agency, acted in "bad faith" by delaying and imposing conditions on plaintiffs' attempts to obtain first party and uninsured motorist coverage.  *Holmes,* 835 A.2d at 853.  SEPTA opposed the claim on the ground that it could not be liable under Section 8371 because it was not an "insurer" subject to the statute.  The Commonwealth

9

Court agreed. *Id.* at 854. The court analyzed three key terms of Section 8371 – "insurer," "insurance policy" and "insured" – and defined these terms by incorporating definitions from other statutes and authorities. First, the court defined the term "insurer" for purposes of Section 8371 as "any person who is doing, has done, purports to do, or is licensed to do an insurance business …." *Id.* at 856 (quoting 40 P.S. § 221.3). Second, the court observed that an "insurance policy" is "'an instrument in writing, by which one party (insurer), in consideration of a premium, engages to indemnify another (insured) against a contingent loss.'" *Id.* at 857 (quoting *Black's Law Dictionary* 1157 (6th ed. 1990)). Further, the court noted that an "insurance policy" must be in writing and may only be issued following review by, and approval of, the state insurance regulator. *Id.* at 857 n.19 (citing 40 P.S. § 477b). Third, under the Motor Vehicle Code, an insured is defined as "'an individual identified by name as an insured in a policy of … insurance.'" *Id.* at 857 (quoting 75 P.S. § 1702). Applying these definitions, the court concluded that SEPTA was not liable under Section 8371 because SEPTA was not licensed to engage in the insurance business and did not accept the liability of others in consideration of the payment of periodic premiums, and also because there was no contract of insurance between the parties. *Id.*

An application of the definitions adopted by the *Holmes* court to the allegations of the Amended Complaint makes clear that CitiFinancial is not an "insurer" subject to Pennsylvania's "bad faith" insurance statute. To the contrary, it is a lending institution that extended the Loan pursuant to the Loan Agreement, which is the subject of this action. (*See* Am. Compl. Exh. A). Specifically, Plaintiff does not – and cannot – allege that CitiFinancial is licensed to issue insurance, that it accepted the liability of others in consideration of the payment of period premiums, or that it was a party to any insurance contract. Nor does Plaintiff allege that

10

CitiFinancial issued a policy of insurance following review by, and approval of, the state insurance regulator. In short, Plaintiff does not allege a single fact suggesting that CitiFinancial could be an "insurer" for purposes of Section 8371 under the definitions articulated in *Holmes*. *See Holmes*, 835 A.2d at 852-56; *see also Lindsey v. Chase Home Finance, LLC*, No. 3:CV-06-1220, 2006 WL 2524227, *4 (M.D. Pa. Aug. 30, 2006) (dismissing "bad faith" insurance claim because "the amended complaint does not aver any facts that Chase has agreed to assume certain risks ... in consideration for premiums; that Chase is licensed to conduct insurance business in Pennsylvania; that the Agreement was reviewed and approved by the state insurance regulator; or that Chase issued an insurance policy naming [plaintiff] as an insured. If an insurance claims adjuster was deemed not to be an insurer, ... an entity more remote from the insurance business than a claims adjuster, cannot be an insurer under section 8371."); *Powell v. Crawford & Co.*, No. C.A. 03-2182, 2003 U.S. Dist. LEXIS 20207, at *2 (E.D. Pa. Oct. 30, 2003) (holding that insurance claims adjuster is not an "insurer" under Section 8371).

In a creative – but ultimately deficient -- effort to save her "bad faith insurance" claim from dismissal, Plaintiff has added the following new allegations to her Amended Complaint: (i) "officers and/or employees of CitiFinancial recommended this credit life and disability insurance to Plaintiff, assisted her in obtaining the same, and handled all paperwork;" (ii) "[l]iterature referring to the credit life and credit disability insurance was produced and provided to Plaintiff by officers and/or employees of CitiFinancial;" "CitiFinanical thereafter direct [sic] Plaintiff and other insureds of [AHL] to direct questions and requests ... to ... CitiFinancial;" "[u]pon information and belief, CitiFinancial's officers and/or employees received financial compensation and/or other rewards when loan customers of CitiFinancial purchased credit life and/or credit disability insurance;" and "the credit insurance programs that

11

CitiFinancial offered to its customers through its wholly-owned subsidiaries would be in fact administered and managed by CitiFinancial ...." (Am. Compl. ¶¶ 9-12).

Plaintiff's new allegations, which essentially allege that CitiFinancial promoted, marketed and sold credit life and disability insurance provided by AHL, fall far short of demonstrating that CitiFinancial is an "insurer" subject to 42 P.S. § 8371.  Indeed, the Eastern District of Pennsylvania in *Kofsky v. Unum Life Ins., supra*, unequivocally held that an insurance broker alleged to have promoted, marketed and sold an insurance policy is not an "insurer" for purposes of the statute. *See Kofsky*, 2014 WL 4375725, at * 5 (allegations that defendant sold an insurance policy insufficient to render it an "insurer" subject to Section 8371).  Clearly, if an insurance broker is not an "insurer" for purposes of Section 8371, a lending institution such as CitiFinancial that offered the option to purchase credit insurance to its borrower cannot be an "insurer."  More to the point, Plaintiff simply has not pled, and cannot plead, that CitiFinancial is engaged in, or licensed to engage in, the insurance business as required to state a claim under the statute, that it issued a state-approved insurance policy, or that it assumed certain risks in consideration for the payment of periodic premiums.

In short, the Amended Complaint, like the original Complaint, fails to allege that CitiFinancial is an "insurer" subject to the "bad faith" insurance statute and, accordingly, Count II must be dismissed as to CitiFinancial.

> **(b)    Plaintiff Has Failed To Plead The Elements Of A "Bad Faith" Claim Against CitiFinancial Or AHL.**

In order to recover under Pennsylvania's "bad faith" statute, a plaintiff must plead and prove by clear and convincing evidence that: (1) the insurer did not have a reasonable basis for denying benefits under the policy; and (2) the insurer knew of or recklessly disregarded its lack of reasonable basis. *Rancosky v. Wash. Nat'l Ins. Co.*, 2017 Pa. LEXIS 2286 (Pa. Sept. 28,

2017).  *See also Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994) (plaintiff must establish bad faith by "clear and convincing" evidence).

As already made clear above, Plaintiff fails to plead any facts showing that CitiFinancial or AHL breached any contractual duties, *i.e.*, by denying Plaintiff any benefits under the Disability Policy.  Where, as here, the plaintiff fails to state a claim for breach of contract, there can be no separate claim for bad faith.  *See Pizzini v. Am. Intern. Specialty Lines Ins. Co.*, 249 F. Supp.2d 569, 570 (E.D. Pa. 2003) (bad faith claim "contingent on the success of the underlying breach of contract claim.") (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999)); *accord West v. CUNA Mut. Ins. Soc.*, No. 11-1259, 2012 WL 527658, at *4 (W.D. Pa. Feb. 16, 2012) ("A bad faith claim against an insurer cannot exist without an underlying claim to enforce some right under an insurance policy.").

Plaintiff's new allegation in the Amended Complaint – that CitiFinancial and AHL should be held liable under the "bad faith" statute because they "knew or should have known" that Bayview would deny "the insured" the "benefits of the insurance they purchased" (Am. Compl. ¶ 61) – is legally insufficient to circumvent Plaintiff's failure to allege that either CitiFinancial or AHL denied Plaintiff any benefits under the Disability Policy.  First, the underlying allegation of wrongdoing, *i.e.*, regarding a denial of benefits under the Disability Policy, is directed at Bayview, not CitiFinancial or AHL.  Second, Plaintiff's allegation that CitiFinancial and AHL "knew or should have known" about a hypothetical future event is entirely conclusory, and does not allege any basic facts even suggesting the identities of the pertinent individuals or the "insureds" who allegedly were denied benefits, much less when such events transpired.  It thus does not satisfy the minimum pleading requirements of *Iqbal*.  Third, and perhaps most to the point, Plaintiff's new allegation fails to plead even one of the basic

elements of a "bad faith" claim – *i.e.*, that an "insurer" "denied benefits" to its insured "without any reasonable basis, and did so with "reckless disregard." *See Rancosky, supra,* 2017 Pa. LEXIS 2286, at *3.

Indeed, even assuming *arguendo* that Plaintiff could plead a denial of benefits, Plaintiff fails to allege *any* facts even suggesting that either Defendant did so with bad faith or "reckless disregard" of the lack of any purported reasonable basis. In *Ridolfi v. State Farm, supra,* the Court dismissed a "bad faith" claim pursuant to Rule 12(b)(6) for this precise reason, opining:

> [t]he Court finds that Plaintiff has failed to allege facts that allow
> the Court to draw a reasonable inference that Defendant acted in
> bad faith under the standards articulated in Iqbal and Twombly.
> While Plaintiff alleges that Defendant "knowingly and
> fraudulently" sent the September 20, 2013 letter reporting the
> incorrect policy limits, she offers no facts supporting that
> conclusion that would allow the Court to draw a reasonable
> inference that Defendant acted "knowingly and fraudulently" in
> doing so. … Such an allegation fails to meet Plaintiff's burden
> under Iqbal and Twombly.

*Ridolfi*, 146 F. Supp.3d at 624 (citing *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp.2d 591, 599 (E.D. Pa. 2010)). Here, as in *Ridolfi*, there is not a single well-pled allegation directed at CitiFinancial or AHL even suggesting that either denied benefits to Plaintiff *at all*, let alone denied with bad faith or reckless disregard. To the contrary, all allegations suggesting that Plaintiff was denied contractual benefits allegedly due under the Disability Policy are directed at Bayview. (*See* Am. Compl. ¶¶ 22 ("Bayview demanded that Plaintiff begin making monthly mortgage payments" prior to the alleged expiration of her disability period); 24 ("Bayview continued to attempt to collect monthly mortgage payments from Plaintiff and threatened to initiate foreclosure proceedings ….")). Moreover, the generalized allegations of Count II do not even relate to Plaintiff, but instead rest upon conclusory averments regarding "Defendants'" alleged conduct toward putative "Class" and "Sub-Class" members, which is plainly insufficient

to withstand a motion under Rule 12(b)(6).[7] *See Iqbal*, 556 U.S. at 678; *Ridolfi*, 146 F. Supp.3d
at 624; *Krisa v. The Equitable Life Assur. Soc.*, 109 F. Supp.2d 316, 319 (M.D. Pa. 2000) (this
Court "need not accept as true 'conclusory allegations of law, unsupported conclusions and
unwarranted inferences.'").

### D.   Plaintiff's Claim For Alleged Violations Of TILA Is Time-Barred And Otherwise Fails To State A Claim.

In Count VI, Plaintiff seeks to state a claim against CitiFinancial and AHL for alleged
violations of TILA.   TILA requires, among other things, disclosure of the terms and conditions
of finance charges in credit transactions or offers to extend credit.   Here, the purported basis for
Plaintiff's claim under TILA, while unclear, appears to be that certain unspecified "finance
charges" disclosed in connection with the Loan Agreement were somehow in inaccurate.   (Am.
Compl. ¶ 89).   Plaintiff seeks damages in connection with her TILA claim.   (*Id.* ¶ 96).

#### (a)   The TILA Claim Is Time-Barred On Its Face.[8]

As an initial matter, the claim for purported TILA violations set forth in Count VI is
plainly time-barred on the face of the pleadings.   TILA requires that an action for damages be
brought "within one year from the occurrence of the violation."   15 U.S.C. § 1640(e).   Courts
construe the "occurrence of violation" to be the date on which the loan closed.   *See, e.g., Rocco
v. J.P. Morgan Chase Bank*, 255 Fed. Appx. 638, 642 (3d Cir. 2007) (affirming dismissal of

---

[7]   *See* Am. Compl. ¶¶ 58-60 (alleging that "defendants" "denied benefits to Plaintiff and
others similarly situated when they ceased to honor their obligations under the credit
disability insurance contract" "resulting in Plaintiff, the Class and Sub-Class becoming
obligated to resume making monthly service on their mortgages.").

[8]   The Third Circuit permits a statute of limitations defense to be raised by a motion to
dismiss pursuant to Rule 12(b)(6) when, as here, the grounds therefor appear on the face
of the complaint.   *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002); *Benak ex
rel. Alliance Premier Growth Fund v. Alliance Capita Mgmt. L.P.*, 435 F.3d 396, 400
n.14 (3d Cir. 2006).

TILA claims that "were not made within one year of the making of [the borrowers'] mortgage.");

*Hover v. First Alliance Home Mortgage*, No. 12-111, 2012 U.S. Dist. LEXIS 29161, at *4 (D.

N.J. March 6, 2012) (dismissing TILA claim with prejudice as untimely because not asserted

within one year of date of loan closing).

Here, the closing on Plaintiff's Loan occurred on May 22, 2009. (Am. Compl. ¶ 7 and

Exh. A). Accordingly, any claim for damages under TILA must have been asserted no later than

May 22, 2010. Because this lawsuit was not filed until September 1, 2017 – more than 7 years

after the expiration of the relevant limitations period – the TILA claim set forth in Count V is

plainly time-barred on the face of the pleadings.

Plaintiff adds a single new allegation to the Amended Complaint, apparently in an effort

to invoke the "equitable tolling" doctrine to save her TILA claim from the bar of the statute of

limitations: "although the disclosures that were made to Plaintiff and the Class were made at the

time the policies and loans were entered into, Plaintiff and the Class were unable and without

means to determine that the disclosures were not accurate and were in fact misleading until their

claims for insurance coverage were denied." (Am. Compl. ¶ 91). This allegation is insufficient

as a matter of law to save the TILA claim from dismissal as time-barred.

"Equitable tolling is an extraordinary remedy which should be extended only sparingly."

*Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005). Thus, the Third Circuit requires

"extraordinary" and "rare" circumstances for the granting of equitable tolling. *United States v.*

*Clive*, No. 05-0383, 2008 WL 3889726, at *5 (W.D. Pa. Aug. 19, 2008) (quoting *Jones v.*

*Morton*, 195 F.3d 153, 159 (3d Cir. 1999)). TILA's statute of limitations is subject to equitable

tolling only in two limited circumstances: (i) where the defendant against whom tolling is

sought actively misled (took affirmative steps to mislead) plaintiff with respect to the specific

16

claim; or (ii) where the plaintiff has been prevented in some extraordinary way from asserting

her rights.[9]  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 & 1391 n.10 (3d

Cir. 1994).  Further, equitable tolling requires a plaintiff to plead facts demonstrating that she

exercised reasonable diligence in preserving her rights during the time period sought to be tolled.

*See Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990); *Podinback v. U.S. Postal Service*,

409 F.3d 584, 592 (3d Cir. 2005).

Moreover, in order to be entitled to equitable tolling in the "active misleading" context,

the plaintiff must plead and prove "efforts by the defendant – above and beyond the wrongdoing

upon which plaintiff's claim is founded – to prevent the plaintiff from suing in time." *Laychock*

*v. Wells Fargo Home Mortg.*, No. 07-4478, 2008 WL 2890962, at *7 (E.D. Pa. July 23, 2008)

(citing *Oshiver*, 38 F.3d at 1387), *aff'd*, 399 Fed. Appx. 716 (3d Cir. 2010); *Cada v. Baxter*

*Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990).  In this Circuit, tolling based on active

misleading requires proof of "fraudulent concealment," *i.e.*, that the Defendant made a fraudulent

misrepresentation to Plaintiff that prevented Plaintiff from timely exercising her legal rights.

*Laychock*, 2008 WL 2890962, at *7.  Thus, tolling in this context requires the plaintiff to satisfy

Federal Rule of Civil Procedure 9(b) by pleading facts demonstrating who made an alleged

fraudulent representation to whom as well as the alleged content of said misrepresentation in

order to demonstrate how the plaintiff was duped into not timely asserting her cause of action.

*Id.*  (citing *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004)).

Here, Plaintiff has pled no facts – much less facts that would satisfy Rule 9(b) -- which

would entitle her to toll TILA's one-year statute of limitations.  Plaintiff has not alleged that

---

[9]   In this Circuit, any version of equitable tolling or equitable estoppel requires the plaintiff
to plead specific facts demonstrating she was actively misled. *See Oshiver*, 38 F.3d 1380,
1389 n.7 .

CitiFinancial or AHL took *any* steps to mislead her.  Her allegation that "Plaintiff and the Class were unable and without means to determine that the disclosures were not accurate and were in fact misleading until their claims for insurance coverage were denied," (Am. Compl. ¶ 91), does not even suggest any affirmative act (much less a misleading one) by either CitiFinancial or AHL.  Nor has Plaintiff alleged any "extraordinary way" in which she has been prevented from asserting her rights, or that she exercised "reasonable diligence" to protect her rights.  To the contrary, Plaintiff's attempt to invoke equitable tolling relies upon nothing more than the alleged underlying disclosures ("Plaintiff … [was] unable to … determine that the disclosures were not accurate … until … claims for insurance were denied" (Am. Compl. ¶ 91)), which, as noted above, is insufficient as a matter of law to give rise to equitable tolling. *See Cada,* 920 F.2d at 451; *Garcia,* 676 F. Supp.2d at 906; *see also Kliesh v. Select Portfolio Servicing, Inc.*, 419 Fed. Appx. 268 (3d Cir. 2011) (affirming dismissal of TILA claim as time-barred where plaintiff failed to allege facts sufficient to invoke equitable tolling); *In re: Smalis*, No. 15-1474, 2016 WL 1639673, at *2 (W.D. Pa. Bankr. April 26, 2016) (holding that plaintiff's "conclusory" allegation that he used "reasonable diligence" was insufficient to toll TILA statute of limitations); *Williams v. EMC Mortg. Corp., Inc.*, No. 12-1215, 2013 WL 1874952, at *4 (E.D. Pa. May 3, 2013) (declining to apply equitable tolling to TILA claim because "the defendants did not actively mislead plaintiff with respect to the plaintiff's cause of action."); *DeLuca v. CitiMortgage*, No. 11-3634, 2012 WL 32136, at *5 (D. N.J. Jan. 4, 2012) (dismissing TILA claim as untimely and where plaintiff failed to plead facts sufficient to establish equitable tolling).

### (b)    Plaintiff Has Not Adequately Pled A Violation Of TILA.

In addition to being plainly time-barred, Plaintiff's putative TILA claim should be dismissed because Plaintiff fails, as a matter of law, to allege a statutory violation by either CitiFinancial or AHL.

18

a. **Plaintiff Fails To Plead A TILA Violation As To AHL.**

Plaintiff cannot plead that AHL violated TILA for the simple reason that AHL is not a "creditor" subject to liability under TILA. (*See* Am. Compl. Exh. A).

TILA is directed solely at parties extending consumer credit, and defines a "creditor" as one who both "(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." *Id.* § 1602(f). "To be a creditor, one must also meet the requirements of Federal Reserve Board Regulation Z, which states that, in addition to the requirements set forth in TILA, 'a person regularly extends consumer credit only if it extended credit … more than 25 times … in the preceding calendar year.'" *Morilus v. Countrywide Home Loans, Inc.*, No. 07-0900, 2007 WL 1810676, at *2 (E.D. Pa. June 20, 2007) (citing 12 C.F.R. § 226.2(a)(17)).

As a matter of law, the allegations of the Amended Complaint and attachments thereto make clear that AHL is not a "creditor" subject to liability under TILA. Plaintiff does not, and cannot, allege that AHL regularly extends consumer credit, or that it was the entity which extended the Loan. Indeed, the Loan Agreement attached to the Complaint as Exhibit A establishes that AHL was not a party thereto and, therefore, cannot be a "creditor" for purposes of Plaintiff's TILA claim. *See* 15 U.S.C. § 1602(f); *Morilus*, 2007 WL 1810676, at *3 ("Since Residential is not a creditor subject to TILA …, I will grant defendant's motion to dismiss with respect to the TILA claim."); *see also Robey-Harcourt v. Bencorp Financial Co., Inc.*, 326 F.3d 1140, 1141 (10th Cir. 2003) (affirming dismissal of TILA claim because the defendant "was not a

creditor and thus could not be held accountable under the Act.").  For this additional reason, the TILA claim must be dismissed as to AHL.

        **b.**        **Plaintiff Fails To Plead A TILA Violation As To CitiFinancial.**

Plaintiff also fails to plead a TILA violation as to CitiFinancial because:  (i) she fails to identify any charges or fees in the Loan Agreement that allegedly were inaccurate or improperly disclosed; and (ii) she bases her TILA claim in part on the alleged subsequent demand for mortgage payments during the alleged disability period, which is not actionable under TILA.

In this regard, courts consistently require plaintiffs asserting TILA violations to plead facts identifying the precise violation at issue.  *See Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp.2d 1048, 1059 (N.D. Cal. 2009) ("If plaintiffs contend that the disclosures on their mortgage transaction failed to comply with TILA, they must explain exactly what information defendants failed to provide."); *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 570 (D. N.J. 2010) (dismissing TILA claims because the plaintiffs "fail[ed] to state with requisite specificity which charges and fees were not properly disclosed and why certain charges and fees [were] not bona fide and [were] unreasonable in amount."); *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 461 (E.D. Pa. 2009) (dismissing TILA claims because the complaint contained "insufficient allegations" of unreasonable charges or fees).

Here, Plaintiff has not sufficiently articulated the alleged TILA violation she is claiming. Plaintiff merely avers that certain unspecified "finance charges" set forth in the Loan Agreement with CitiFinancial "were not accurate in that the amount quoted as a disability insurance premium was not in effect an insurance premium as [Defendants] failed to provide the associated insurance."  (Am. Compl. ¶ 89).  This allegation makes little sense, and certainly does not plead how the "Finance Charge" disclosed in the Loan Agreement was inaccurate.  Indeed, Plaintiff

does not provide any detail in support of such allegation, such as facts describing how any disclosures required by TILA were specifically inaccurate or unclear.

Plaintiff also alleges in support of her TILA claim that Defendants violated TILA because Plaintiff was "required to make [mortgage] payments during the period of disability that [she] should not otherwise have been required to make," rendering the initial disclosures somehow inaccurate. (Am. Compl. ¶ 93). As a matter of law, such allegation – which relates to alleged events years after the Loan closing – does not give rise to liability under TILA. As explained by the Third Circuit in *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896 (3rd Cir. 1990):

> The effect of subsequent events on the accuracy of disclosures is dealt with in 12 C.F.R. § 226.17(e) which states:
>
>> If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation.
>
> The purpose of this regulation is to relieve creditors from making disclosures regarding every contingency which might arise. ... Indeed, the Official Staff Interpretation of § 226.17(e) states:
>
>> Inaccuracies in disclosures are not violations if attributable to events occurring after the disclosures are made. For example, when the consumer fails to fulfill a prior commitment to keep collateral insured and the creditor provides the coverage and charges the consumer for it, such charge does not make the original disclosure inaccurate.

*Smith*, 898 F.2d at 899-900 (citing 12 C.F.R. § 226.17(e) (Supp. I 1988)). *Accord Williams v. EMC Mortg. Corp., Inc.*, No. 12-1215, 2013 WL 1874952, at *3 (E.D. Pa. May 3, 2013) ("The TILA functions to protect consumers by requiring disclosures at the time of a closing of a loan transaction; ... **Actions taken after a loan closing are not properly the subject of a TILA improper disclosure claim unless they constitutes another transaction, such as a**

refinancing that would require new disclosures under 12 C.F.R. § 226.20.") (emphasis added).

Under the above established authority, Plaintiff's attempt to base the TILA claim on events subsequent to the loan closing, including the alleged failure to honor the Disability Policy, fails as a matter of law.  Plaintiff's TILA claim must be dismissed for this additional reason.

### E.    Plaintiff Fails To Plead A Claim Against CitiFinancial And AHL For Alleged Violations Of The UTPCPL.

In Count VIII, Plaintiff purports to state a claim against CitiFinancal and AHL for violations of the UTPCPL, 72 P.S. § 201-1, *et seq.*

#### (a)    The UTPCPL Claim Is Time-Barred.

The statute of limitations for a claim under the UTPCPL is six years.  *See* 42 P.S. § 5527; *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 n.9 (Pa. Super. 1999).  A central basis for Plaintiff's purported UTPCPL claim here is that Defendants allegedly made "misrepresentations" in connection with the May 22, 2009 Loan Agreement and Disability Policy.  (*See* Am. Compl. ¶¶ 112-115 (alleging that "Defendants made promises through their policies and documentation stating that the credit disability insurance that they provided was of a certain quality and that … benefits would be available" and the "aforesaid misrepresentations … were deceptive …."); Exh. A; *see also* Exh. 1 hereto).  Thus, to the extent Plaintiff's UTPCPL claim arises out of alleged "misrepresentations" occurring in connection with the May 22, 2009 loan and insurance transactions, such claim expired – at the latest – on May 22, 2015.  Accordingly, Plaintiff's UTPCPL claim in Count VI is time-barred on its face.

Plaintiff's effort to avoid the bar of the statute of limitations, by alleging for the first time in the Amended Complaint that "Plaintiff … [was] unable to determine that the policies lacked the advertised characteristics" until their claims for coverage were allegedly "denied" – even if

true -- fails to provide any basis for tolling the statute of limitations.  (Am. Compl. ¶ 115).

Indeed, the principles which bar any application of the equitable tolling doctrine in the context of

Plaintiff's purported TILA claim apply with equal force here to preclude that doctrine from

tolling the UTPCPL claim.  *See Levy v. Keystone Food Products*, No. 07-5502, 2007 WL

4115856, at **3-4 (applying the Third Circuit's "equitable tolling" doctrine and holding that

plaintiff failed to plead facts sufficient to toll the UTPCPL's statute of limitations); *Oshiver*, 38

F.3d at 1391 n.10; *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000).  Specifically, Plaintiff has

not alleged any facts to suggest that CitiFinancial or AHL took a single step to mislead the

Plaintiff and prevent her from suing in time.  Accordingly, the Complaint fails to provide any

basis for invocation of the "sparingly applied" equitable tolling doctrine so as to save Plaintiff's

UTPCPL claim from dismissal.  *See Levy*, 2007 WL 4115856, at *4.

> **(b)     The UTPCPL Does Not Apply To Ongoing Contractual**
> **Representations In The Insurance Context.**

Even if the UTPCPL claim were not time-barred (and it is), as a matter of law the

UTPCPL simply does not apply in this context.  The UTPCPL "covers claims relating to the

initial purchase of goods or services, not to later problems in an ongoing contractual

relationship." *Romero v. Allstate Property & Cas. Ins. Co.*, No. 16-4037, 2017 WL 895593, at

*1 (E.D. Pa. March 7, 2017).  Thus, in the insurance context, Pennsylvania courts have held:

> [t]he insurance bad faith statute applies to post-contract formation
> conduct.  The UTPCPL, on the other hand, applies to conduct
> surrounding the insurer's pre-formation conduct.  The UTPCPL
> applies to the sale of an insurance policy.  It does not apply to the
> handling of insurance claims.  Rather § 8371 [the bad faith statute]
> [provides the exclusive statutory remedy applicable to claims
> handling.  Hence, **an insured cannot bring an action under the**
> **UTPCPL based on the insurer's failure to pay a claim or to**
> **investigate a claim.**

*Kelly v. Progressive Advanced Ins. Co.* 159 F. Supp.3d 562, 564-65 (E.D. Pa. 2016) (citations omitted) (emphasis added); *accord Gibson v. Progressive Specialty Ins. Co.*, No. CIV.A. 15-1038, 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015) (noting that an action against an insurer under the UTPCPL "cannot be based on the failure to perform a contractual obligation, such as the failure to pay a claim or failure to investigate pursuant to the contract.").

Here, to the extent Plaintiff's UTPCPL claim rests upon her allegations that "Defendants" "fail[ed] to provide the credit disability insurance advertised" by neglecting to make mortgage payments pursuant to the Disability Policy -- which allegedly occurred in 2016, long after the May 2009 contract was formed – such allegations fail to state a legally-cognizable UTPCPL claim in this context. (*See* Am. Compl. ¶¶ 7, 8, 112-114). Indeed, Plaintiff's sole new allegations in the Amended Complaint – that "defendants" allegedly failed to abide by promises that, *inter alia*, benefits would be payable under the applicable policies due to a "qualified disability" and that "monthly loan payment can be paid … for a period up to 60 months" (Am. Compl. ¶ 113) – only serves to reinforce this conclusion. Stated differently, Plaintiff's averments that "Defendants" refused to pay disability insurance benefits in the course of the parties' ongoing contractual relationship do not relate to the "initial purchase of goods or services," and thus do not give rise to a claim for UTPCPL violations. Plaintiff's UTPCPL claim in Count VIII must be dismissed for this additional – and equally important -- reason. *See Romero*, 2017 WL 895593, at *2 (dismissing UTPCPL claim predicated on insurer's alleged refusal to pay a claim; "[t]he conduct Plaintiffs allege here is suited to a bad faith action, either under statute or common law, … The UTPCPL simply does not cover this case and the Court will dismiss Count Three.").

24

   (c)  **Plaintiff Fails To Plead Facts Demonstrating Any Violation Of The Enumerated Subsections of Section 201-2(4) Of The UTPCPL.**

Even if the UTPCPL applied here (or was not time-barred) – and it does not – Plaintiff has failed to plead any facts sufficient to give rise to a UTPCPL claim against either CitiFinancial or AHL.

Plaintiff's claim for violations of the enumerated subsections of Section 201-2(4) are premised on nothing more than legal conclusions, with no supporting facts whatsoever. Parroting the statute, Plaintiff alleges that CitiFinancial and AHL allegedly violated subsections (v), (vii), (xiv) and (ix) of Section 201-2(4) by "representing that services have characteristics, uses and benefits that they do not have;" "representing that services are of a particular standard, quality if they are of another;" "failing to comply with the terms of any written guaranty or warranty;" and "advertising services with intent not to sell them as advertised." (Am. Compl. ¶ 119). It is axiomatic that such conclusory allegations, which merely track the statutory language, are insufficient to state a legally-viable claim. *See Iqbal*, 556 U.S. at 678.

   (d)  **Plaintiff Fails To Plead A Violation Of The UTPCPL's "Catchall Provision."**

Plaintiff also purports to state a claim under the UTPCPL's "catchall" provision, Section 201-2(4)(xxi), which prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." To state a claim under the UTPCPL's "catchall" provision, a plaintiff must plead with particularity facts to establish: (1) a fraudulent or deceptive representation, or otherwise prohibited conduct, by the defendant; (2) justifiable reliance by plaintiff on the representation or prohibited conduct; and (3) that plaintiff suffered an "ascertainable loss of money or property" as a result thereof. *See Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp.3d 746, 776 (W.D. Pa. 2015); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004); *Taggart v. Norwest Mortg., Inc.*, No. 09-1281, 2010 WL 114946,

at *9 (E.D. Pa. Jan. 11 2010).  Here, Plaintiff's UTPCPL claim fails because she has not (and

cannot allege) the elements of such a claim as to CitiFinancial or AHL.

> **a.     Plaintiff Has Not Alleged Any "Fraudulent" Or "Deceptive"
>         Conduct By CitiFinancial Or AHL.**

In order to satisfy the first element of her putative UTPCPL claim, Plaintiff must plead

facts demonstrating a "fraudulent or deceptive" act or practice.  In claims involving insurance

policies, "in Pennsylvania, only malfeasance, the improper performance of a contractual

obligation, raises a cause of action under the [UTPCPL], and an insurer's refusal to pay a claim

which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable."

*Hampton v. Geico Ins. Co.*, 759 F. Supp.2d 632, 651 (W.D. Pa. 2010) (citing *Gardner v. State

Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008)).

Plaintiff's UTPCPL claim fails in the first instance because she has not alleged any

fraudulent or deceptive act or practice – or malfeasance -- by CitiFinancial or AHL, a required

element of her claim.  Indeed, it is axiomatic that the UTPCPL "does not impose liability on

parties who have not themselves committed any wrongdoing."[10]  *Williams v. Nat'l School of

Health Tech., Inc.,* 836 F. Supp. 273, 283 (E.D. Pa. 1993), *aff'd*, 37 F.3d 1491 (3d Cir. 1994).

To the contrary, Plaintiff merely alleges that "Defendants" "made promises through their policies

and documentation" stating that credit disability insurance would be available, and that

Defendant Bayview then allegedly failed to honor the terms of the Credit Insurance Policy after

the Mortgage was transferred to it.  (Am. Compl. ¶¶ 112, 19-26).  This allegation, which is

directed at Bayview, reflects nothing more than nonfeasance -- an alleged failure to honor

---

[10]   Thus, Plaintiff's new allegation that "CitiFinancial knew or should have known that
       Bayview would insist upon collecting monthly payments from Plaintiff during the period
       of disability" (Am. Compl. ¶ 28), does not constitute a fraudulent or misleading
       representation, or malfeasance, which could give rise to a UTPCPL claim.

DMEAST #32522050 v5

contractual obligations by Bayview (which is barred by the "gist of the action" and "economic loss" doctrines, discussed below). Such allegation does not even suggest – much less rest upon well-pled facts supporting the conclusion that – CitiFinancial or AHL made any fraudulent or deceptive misrepresentation. *See Papurello*, 144 F. Supp.3d at 776 ("Plaintiffs' allegations in support of their individual and class-wide [UTPCPL] claims are not entitled to the assumption of truth because they are legal conclusions unsupported by factual allegations.").

Finally, Plaintiff's attempt to save her UTPCPL claim from dismissal by alleging for the first time in the Amended Complaint that "Defendants" committed "fraud in the inducement," by allegedly making certain inflated statements to Plaintiff regarding the benefits of the Disability Policy (not reflected in the Loan Agreement or Disability Agreement) (*see* Am. Compl. ¶ 113), fails on its face. These alleged representations, even if they had been made, constitute non-actionable "puffery." Pennsylvania courts have held that puffery – "an exaggeration or overstatement in broad, vague and commendatory language" – is not actionable in fraud. *See Castrol, Inc. v. Pennzoil Company,* 987 F.2d 939 (3d. Cir.1993). When reviewing claims of fraud, actionable "misrepresentation must be distinguished from mere 'puffing.'" *Berkebile v. Brantly Helicopter Corporation,* 462 Pa. 83, 103, 337 A.2d 893, 903 (1975). *See also Huddleston v. Infertility Center of America,* 700 A.2d 453 (Pa.Super.Ct.1997) (holding that representation that defendant's clinic was the "premier" surrogacy program in the country amounted to mere puffing.). Applying these principles, there can be no doubt that the alleged new "representations" reflect nothing more than exaggerated overstatements designed to create appeal and, therefore, constitute non-actionable puffery.[11]

---

[11]   In any event, such representations are barred by Pennsylvania's parol evidence rule, which bars claims premised upon alleged prior or contemporaneous representations or agreements concerning subjects that are specifically dealt with in an integrated written

27

> **b.**     **Plaintiff Has Failed To Plead "Justifiable Reliance" Or That She Suffered An "Ascertainable Loss Of Money Or Property."**

"To bring a private cause of action under the UTPCPL, a plaintiff must show that [she] justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Pearson v. LaSalle Bank*, No. CIV.A. 08-2306, 2009 WL 1636037, at *4 (E.D. Pa. June 9, 2009) (citations omitted). Thus, a plaintiff must plead that she "justifiably relied on the information (or misinformation) presented by [the defendant] – *i.e.*, that they engaged in some detrimental activity based on the defendant's conduct [...] [and that she] suffered damages as a proximate result of such reliance." *Hersh v. CitiMortgage, Inc.*, No. 2:13-CV-1344, 2013 WL 6858443, at *7 (W.D. Pa. Dec. 30, 2013); *see also Hunt v. United States Tobacco Co.*, 538 F.3d 217, 225 (3d Cir. 2008) (holding that a plaintiff must allege justifiable reliance for all substantive subsections of the UTPCPL).

As Plaintiff cannot plead any misrepresentation or deceptive conduct of CitiFinancial or AHL, she therefore cannot allege that she "justifiably relied" on the same. Nor, for the same reason, can Plaintiff allege that she suffered any "ascertainable loss of money or property" as a result of the conduct of either of these Defendants. Accordingly, Count VIII for alleged UTPCPL violations fails for this additional reason. *See Smith v. State Farm Mut. Automobile Ins. Co.*, 506 Fed. App'x 133, 137 (3d Cir. 2012) (upholding dismissal of UTPCPL claim because the plaintiff "did not allege actions pursued on the basis of [the defendant's] conduct.");

---

contract. *See Peruto v. Santander Bank, N.A.*, No. 16-4092, 2016 WL 6190964, at *4 (E.D. Pa. October 24, 2016); *Stamford, Inc. v. The Color Works, Inc.*, No. 94-6278, 1996 WL 557328, at *2 (E.D. Pa. Sept. 30, 1996); *1726 Cherry St. Partnership v. Bell Atl. Props., Inc.*, 653 A.2d 663, 665 (Pa. Super. 1995). The Loan Agreement and Disability Policy are written, integrated contracts. Indeed, the Disability Policy contains an "ENTIRE CONTRACT" provision, which states: "The policy including the Group Policy Application, and any endorsements, constitutes the entire contract of insurance." All statements made by the Creditor or the Insured Debtor(s) will be deemed representations and not warranties. ..." *See* Exh. 1 at p. 5.

28

*Peruto, supra*, 2016 WL 6190964, at *5 (plaintiff "cannot plausibly allege justifiable reliance where, shortly after the alleged misrepresentation, he signed a written contract that explicitly contradicted the alleged oral promise."); *Sexton v. PNC Bank, N.A.*, 792 A.2d 602, 608 (Pa. Super. 2002) (upholding dismissal of UTPCPL claim because "the complaint fails to raise specific allegations that the loss was caused by [plaintiff's] reliance on conduct or representations of [defendant] ...."), *appeal denied*, 814 A.2d 678 (Pa. 2002); *Benner*, 917 F. Supp.2d at 360 (dismissing UTPCPL claim for failure to plead an "ascertainable loss.").[12]

    (e)    **Plaintiff's UTPCPL Claim Is Barred By The "Gist Of The Action" Doctrine.**

Pennsylvania's "gist of the action" doctrine prohibits a plaintiff from re-casting an ordinary breach of contract claim into a putative tort or UTPCPL claim. *See eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). Essentially, the doctrine precludes a plaintiff from recasting a contract-based claim into a tort or UTPCPL claim. *See Jones v. ABN AMRO Mortg. Group., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) (the gist of the action doctrine "precludes plaintiffs from recasting ordinary breach of contract claims into tort claims."). "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious." *Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp.2d 826, 833 (E.D. Pa. 2000).

---

[12]    Plaintiff adds the following, conclusory new averment in an apparent effort to plead "justifiable reliance" and an "ascertainable loss:" "Plaintiff and the members of the Sub-Class relied on the representations of the Defendants as evidenced by their acceptance of benefits that were paid following their disability claims." (Am. Compl. ¶ 117). It goes without saying, however, that the alleged acceptance of a "benefit" supported by a valid contract does not give rise to a claim of justifiable reliance to one's detriment or an "ascertainable loss." *See Sexton*, 792 A.2d at 608.

Plaintiff's UTPCPL claim here is barred by the "gist of the action" doctrine because it is premised solely on a contractual relationship between the parties, as defined by the Loan Agreement and the Disability Policy.  Indeed, Plaintiff's allegation in Count VIII that "Defendants" "fail[ed] to provide the credit disability insurance" benefits that allegedly were due in purported violation of the UTPCPL (Am. Compl. ¶ 120), is substantially identical to her conclusory allegation that "Defendants" breached a contract by allegedly "fail[ing] to make payments" "under the terms of the credit disability insurance policy."  (*Id.* ¶¶ 51-54).  As Plaintiff's allegations in Count VIII are entirely premised on contract – *i.e.*, the Disability Policy -- they are barred by the "gist of the action" doctrine.  *See Spruce Street Props., Ltd. v. Noblesse*, No. 2:09-cv-1405, 2011 U.S. Dist. LEXIS 105835, at *32 (W.D. Pa. Sept. 19, 2011) (dismissing UTPCPL claim under economic loss doctrine with express recognition that "gist of the action doctrine" would apply equally as a bar to the claim); *Jones,* 606 F.3d at 123-24 (mortgagor's tort claim against mortgagees, based on alleged breach of duty to properly credit mortgage loan payments, was properly dismissed pursuant to Pennsylvania's "gist of the action" doctrine because duty was imposed by contract rather than by law).

      **(f)**      **Plaintiff's UTPCPL Claim Is Barred By The "Economic Loss" Doctrine.**

Count VIII should be dismissed for the additional reason that it is barred by the "economic loss" doctrine.  In *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 678 (3d Cir.2002), the Third Circuit held that Pennsylvania's "economic loss" doctrine precludes a plaintiff from pursuing tort and UTPCPL claims based on purely economic damages.  That doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  *Werwinski*, 286 F.3d at 671.  It is "designed to ... establish clear boundaries between tort and contract law."  *Id.* at 680.  Stated differently, the "economic loss" doctrine provides that

30

"no cause of action exists for [tort] that results in solely economic damages unaccompanied by physical injury or property damage." *Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840, 841 n.3 (Pa. 2009) (quotation omitted); *see also Sarsfield v. CitiMortgage, Inc.*, 707 F. Supp.2d 546, 556 (M.D. Pa. 2010) (economic loss doctrine precludes plaintiffs from bringing action in tort "where the only injury was 'economic loss" – that is, loss that is neither physical injury nor damage to tangible property.").

Courts applying the rule articulated in *Werwinski* have held that "a UPTCPL claim is barred where allegedly deceptive conduct is clearly 'interwoven' with an insurance contract and a plaintiff seeks damages that flow from the contract." *Ridolfi*, 146 F. Supp.3d at 626. (citing *McGuckin*, 118 F. Supp.3d at 721-22; *Zeglen*, 2014 WL 4215531, at *4; *Tubman*, 943 F. Supp.2d at 530; *Sicherman v. Nationwide Life Ins. Co.*, No. 11-7727, 2012 WL 1122737, at *4 (E.D. Pa. Apr. 4, 2012)). *Accord Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677, 2014 WL 815244, at *13 (S.D.N.Y. March 3, 2014) (UTPCPL claims are barred by economic loss doctrine under Pennsylvania law, where the allegations giving rise to UTPCPL claim are clearly "inextricably intertwined" with allegations underlying breach of contract claim).

Here, Plaintiff's UTPCPL claim is barred by the "economic loss" doctrine because it is clearly interwoven with her Disability Policy.  Indeed, all of the conclusory allegations underlying the putative UTPCPL claim arise directly from that Policy.  (*See* Am. Compl. ¶¶ 112, 116).  Further, Plaintiff seeks solely economic damages for the alleged UTPCPL violations.  (*See* Am. Compl. ¶¶ 118, 120).  For these reasons, the UTPCPL claim set forth in Count VIII is barred by Pennsylvania's "economic loss" doctrine.

## IV.   __CONCLUSION__

For all of the above reasons, Plaintiff's effort to save from dismissal her claims directed at CitiFinancial and AHL, by adding a handful of conclusory, unsupported new "allegations," fails as a matter of law.


Dated:  January 12, 2018                       Respectfully submitted,

                                               _/s/  Martin C. Bryce, Jr._
                                               Martin C. Bryce, Jr. (No. 59409)
                                               bryce@ballardspahr.com
                                               Ballard Spahr LLP
                                               1735 Market Street, 51st Floor
                                               Philadelphia, PA  19103
                                               215.864.8238

                                               _Attorneys for Defendants CitiFinancial_
                                               _Services, Inc. and American Health and Life_
                                               _Insurance Company_


Of counsel:
Courtney L. Yeakel
yeakelc@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
215.864.8206

32

## CERTIFICATE OF SERVICE

I certify that on this date I caused copies of the foregoing papers to be served on the person(s) listed below by via ECF transmission.

David M. Kobylinski, Esquire
Peter T. Kobylinski, Esquire
515 Court Place, Ste 4
Pittsburgh, PA 15219

*Counsel for Plaintiff*

Joseph E. Culleiton, Esq. Blank Rome, LLP
Union Trust Building 501 Grant Street, Ste 850
Pittsburgh, PA 15219

*Counsel for Bayview Loan Servicing, LLC*

Cory S. Winter, Esquire
Saul Ewing Arnstein & Lehr LLP
2 North 2nd Street, 7th Floor
Harrisburg, PA  17101

James A. Keller, Esquire
Saul Ewing Arnstein & Lehr LLP
1500 Market Street, 38th Floor
Philadelphia, PA  19102

*Counsel for Cigna Group Insurance.*

/s/ Martin C. Bryce, Jr.
Martin C. Bryce, Jr.

Dated:  January 12, 2018