# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHRYL MARTIN, on behalf of herself and others similarly situated, | ) ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | NO.  2:17-cv-01276-DSC |
| | ) | |
| v. | ) | **CLASS ACTION** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| DISABILITY INSURANCE COMPANY | ) | |
| OF NORTH AMERICA (d/b/a CIGNA), | ) | |
| AMERICAN HEALTH AND DISABILITY | ) | |
| INSURANCE COMPANY, BAYVIEW | ) | |
| LOAN SERVICING, LLC, AND | ) | |
| CITIFINANCIAL SERVICES, INC. | ) | |
| Defendants. | | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANTS CITIFINANCIAL SERVICES, INC. AND AMERICAN HEALTH AND LIFE INSURANCE COMPANY**

David M. Kobylinski, Esquire
dkobylinski@prlawgroup.com
Praetorian Law Group, LLC
515 Court Place, Ste 4
Pittsburgh, PA 15219
(412) 281-6600

**Table of Contents**

**Table of Authorities** ......................................................................................................... 3

1.   Introduction and Summary ............................................................................................ 5

   *a)*   *At the Present Time a Clear Picture Is Impossible Because Much of the Relevant*

*Information Remains within Defendants' Exclusive Control.* ...................................................... 5

   *b)*   *Defendants Have Made a Key Admission that Requires the Completion of Discovery...* 6

2.   Material Facts .................................................................................................................. 7

   *a)*   *Case History and Procedure* ......................................................................................... 7

   *b)*   *The Allegations as Pled* ................................................................................................. 7

   c)   *Additional Information Established Thus Far* ................................................................ 8

3.   Legal Standard ................................................................................................................ 9

4.   Argument ....................................................................................................................... 10

   *a)*   *Both CitiFinancial and American Health Are in Breach of Contract.* ......................... 10

   *b)*   *Both CitiFinancial and American Health Are Insurers Who Have Acted in Bad Faith in*

*Violation of 42 Pa.C.S. § 8371.* ............................................................................................... 12

   *c)*   *Plaintiff's TILA Complaint is Timely Raised and Adequately Pled.* ............................ 15

   *c)*   *Plaintiff's Claim Under the UTPCPL is Timely* ........................................................... 16

   *d)*   *The UTPCPL Is Applicable and Plaintiff's Claims Are Adequately Plead* ................... 17

   *e)*   *Plaintiff's UTPCPL Claims are not Barred by the Gist of the Action Doctrine.* ............. 21

   *f)*   *Economic Loss Doctrine* ............................................................................................... 23

5.   Leave to Amend After Discovery .............................................................. 24

6.   Conclusion ............................................................................................. 24

**Table of Authorities**

## Cases

Abramson v. State Farm Ins. 1993 WL 126413 at *5 and *6 (E.D. Pa. April 16, 1993) ................ 19

Ash v. Cont'l Ins. Co., 932 A.2d 877 (Pa. 2007) .......................................................... 22

Bilt–Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005) ..................... 23

Brown v. Progressive Insurance Co., 860 A.2d 493 (Pa. Super. 2004) ........................................ 15

Bruno v. Erie Ins. Co. 106 A.3d 48. (Pa. 2014) .......................................................... 22

Carlucci v. Maryland Cas. Co., 1999 WL179750 *1 (E.D. Pa. March 15, 1999) ............................ 19

Chacanaca v. Quaker Oats Co., 752 F.Supp.2d 1111 (N.D.Cal.2010) ........................................ 21

Com. ex rel. Corbett v. Peoples Benefit Servs. Inc.,  923 A.2d 1230, 1236 (Pa. Comwlth. 2007)... 18

Com. ex rel. Creamer v. Monumental Prop. Inc.,  329 A.2d 812, 816-17 (Pa. 1974) ..................... 17

Cowell v. Palmer Twp., 263 F.3d 286, 295 (3d Cir. 2001) ............................................... 17

DiCicco v. Citizen's Financial Group, Inc., 2015 WL 5302767 (E.D. Pa. Sept. 10, 2015) .......... 15

Dilworth v. Metropolitan Life Ins. Co. 418 F.3d 345 (3d.Cir 2005) ................................. 17

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d. Cir. 2009) ........................................ 10

Grode v. Mutual Fire, Marine, and Inland Insurance Co., 623 A.2d 933, 935 (Pa. Cmwlth. 1993) . 20

In re Milo's Dog Treats 9 F.Supp.3d 523 (W.D.Pa 2014) ............................................ 20

Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015) ........................................ 11

Knight v. Springfield Hyundai, 81 A.3d 940 (Pa.Super.2013) ........................................ 23

Lites v. Great Am. Ins. Co., 2000 WL 875698 *5 (E.D. Pa. June 23, 2000) ................................. 19

O'Keefe v. Mercedes–Benz USA, LLC, 214 F.R.D. 266 (E.D.Pa.2003) ....................................... 23

Parasco v. Pacific Indemnity Co., 870 F. Supp. 644, 648 (E.D. Pa. 1994) ...................................... 19

Pekular v. Eich,  513 A.2d 427, 433 (Pa. Superior Ct. 1986)........................................................ 19

Pekular v. Eich, 513 A.2d 427, 433 (Pa. Super. 1986)................................................................ 18

Phillips v. Allegheny County, 515 F.3d 224, 228 (3d Cir. 2008)................................................... 9

Raab v. Keystone Insurance Co., 412 A.2d 638, 639 (Pa. Superior Ct. 1979) ............................... 20

Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364, 365 (Pa. 2017)........................................ 13

Ridolfi v. State Farm Auto. Ins. Co., 146 F. Supp. 3d 619 (M.D. 2015)...................................... 14

Schroeder v. Acceleration Life Ins. Co. of Pa., 972 F.2d 41, 46 (3d Cir. 1992) ............................. 19

Smith v. Fidelity Discount Co., 898 F.2d 896 (3d Cir. 1990) ...................................................... 16

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir.1997).......................... 21

Sterling Drug, Inc. v. FTC, 741 F.2d 1146, (9th Cir.1984) ........................................................ 21

Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710 (Pa.Super.2005) ..................................... 22

v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002)............................................ 9

Werwinski v. Ford Motor Co. 286 F.3d 661 (3d Cir. 2002)........................................................ 23

Williams v. Gerber Products Co., 552 F.3d 93 (9th Cir.2008)................................................... 20

Wright v. North American Life Assoc. Co.,  539 A.2d 434, 438  (Pa. Super. 1988) ...................... 18

Wright v. North American Life Assurance Co., 539 A.2d 434, 439 (Pa. Superior Ct. 1988) ......... 20

Wulf v. Bank of Am., N.A., 798 F. Supp. 2d 568 (E.D. Pa 2011) ............................................... 15

## Statutes

42 Pa.C.S. § 8371.................................................................................................................. 12

73 P.S.  § 201 0-2 (4) ............................................................................................................. 18

## Rules

Fed. R. Civ. Proc. 9(b) ........................................................................................................... 13

1.    **Introduction and Summary**

This Court should be cognizant of what defendants did and what they are asking the Court to rubber stamp. Shryl Martin became disabled and unable to work in October 2012. This is a common tail that all too often ends in bankruptcy and foreclosure. Shryl, however, had purchased credit disability insurance and was entitled to credit disability benefits until May 2018. She thought she had peace of mind.

However, in September 2015, CitiFinancial and its wholly-owned insurance subsidiary, American Health, engaged in a transaction between themselves, wherein American Health purportedly credited CitiFinancial with $16,538.86. In July 2015, Bayview began to service plaintiff's loan. Bayview's loan statements originally showed a payment due date of May 10, 2018. Effective October 10, 2016, Bayview demanded that plaintiff renew making payments in spite of the fact that the period of disability remained in force. Boiled to its essence, it appears CitiFinancial engaged in internal accounting chicanery and then sold plaintiff's loan for cash. The net result being that plaintiff and the class were denied the benefits of the insurance they purchased while CitiFinancial has enriched itself. These defendants now ask this Court to rule that these machinations are legitimate and that those they have harmed are without remedy in law or equity.

a)    **At the Moment, a Clear Picture Is Impossible Because Much of the Relevant Information Remains within Defendants' Exclusive Control**.

At present, confusion in areas of this matter remains unavoidable. Defendants' retain exclusive control over much of the relevant information, and they are holding these chestnuts tightly. Of key importance, Shryl Martin at this time is unable to ascertain whether CitiFinancial has sold her loan to another or remains in possession of the same. At the January 19, 2018 scheduling conference, Bayview's counsel speculated that Plaintiff's loan might have been sold to

a Real Estate Investment Trust (an "REIT"). Plaintiff's attempts to get to the bottom on this important question have been met with fierce resistance from CitiFinancial, American Health and Bayview. These defendants appear dead set on forcing plaintiff to file additional motions to compel on this topic. Of note, they have provided neither timely nor meaningful initial disclosures--which has resulted in unnecessary and wasteful motions practice. It is a matter of prime importance, because as discussed below, Bayview is taking the position that plaintiff is over $38,000 in arrears on her "$500-a-month-mortgage" because Bayview is tacking on all of its legal fees that it occurs in this matter. See Exhibit "1". As discussed below, there is no contractual justification for such charges, and these charges amount to yet another ongoing and continual violation of the Truth-in-Lending Act.

        **b)**        **Defendants Have Made a Key Admission that Requires the Completion of Discovery**.

On February 12, 2018, counsel for CitiFinancial and Bayview provided plaintiff with correspondence that establishes that CitiFinancial acquired control and responsibility of the credit insurance benefits owed to Shryl Martin. Exhibit "2". If accurate, the CitiFinancial has indeed acted as an insurer rendering itself subject to the obligations and penalties of Pennsylvania's bad faith statute--42 Pa.C.S. § 8371.

2.        **MATERIAL FACTS**

The following sets forth the pertinent procedure and facts as developed at the present

time.

a)        **Case History and Procedure**

Plaintiff commenced this matter in the Court of Common Pleas on March 27, 2017. She

filed a class-action complaint on September 1, 2017 at which time CitiFinancial was named as a

party. Defendants then removed this matter to this Court. All defendants filed motions to

dismiss, and plaintiff filed an Amended Class Action Complaint on December 1, 2017. (Doc.

No. 29.) The present motion followed.

b)        **The Allegations as Pled**

On May 22, 2009, plaintiff obtained a mortgage secured loan in the amount of

$50,627.11 from CitiFinancial in exchange for an annual percentage rate of 11.67%. Amended

Complaint ("Cmplt.") at ¶ 7 & Exhibit "A". In addition, the Loan Agreement with CitiFinancial

provided that plaintiff would pay CitiFinancial credit insurance premiums in the amount of

$36.80 per month for credit life insurance and $30.30 per month for credit disability insurance.

Id. The loan agreement provides:

> INSURANCE:  If Borrower purchases any insurance at Lender's office, Borrower
> understands and acknowledges that (1) the insurance company may be an affiliate
> of Lender, (2) Lender's employee(s) may be an agent for the insurance company,
> (3) such employee(s) us not acting as the agent, broker or fiduciary for Borrower
> on this loan but may be an agent of the insurance company, and (4) Lender or the
> insurance company may realize some benefit from the sale of insurance....

Cmplt. at ¶ 7 & Exhibit "A. As concerns Shryl Martin, the insurance company was indeed an

affiliate of the "Lender", CitiFinancial wholly owns American Health & Life Insurance Company

("American Health"). Cmplt. at ¶ 8. Moreover, employees of CitiFinancial acted as agent for

American Health by recommending the credit insurance and handling the paperwork. Cmplt. at ¶

9. CitiFinancial thereafter collected the premiums for the insurance with receipt of Ms. Martin's monthly loan payments. Cmplt. at ¶ 13 and Exhibit "A". Shryl Martin become disabled in October 2012 and pursuant to the terms of the credit disability insurance, she would not be obligated to make loan payments until May 2018. Cmplt. at 14 - 15.

The relationship between the parties thereafter remained static until 2015. On January 5, 2015, Shryl Martin was advised that the credit insurance contract she purchased through CitiFinancial and its subsidiaries was to be terminated. Cmplt. at ¶ 16. Because Ms. Martin had a claim that had already been approved, she was informed that this change would not affect her benefits and that CitiFinancial had agreed to pay her credit insurance premiums. Cmplt. at ¶ 16 - 20. A few months later, Bayview Loan Servicing, LLC ("Bayview") took over the administration of her loan. Cmplt. at 19.

Bayview informed Ms. Martin that as opposed to May 2018, it expected her to begin making monthly payments on her loan effective October 2016. Cmplt. at ¶ 22. Plaintiff in turn advised Bayview that she remained within the period of disability under her credit insurance policy; however, Bayview continued to demand that plaintiff make payments and threatened her with foreclosure in the event she refused. Cmplt. at ¶ 23-24. Subsequent to October 1, 2016, Bayview followed through its promises, and undertook such actions as causing a notice to be placed on the door of her neighbor that plaintiff was in default of her mortgage. Cmplt. at ¶ 26. As a result of Bayview's threats of foreclosure, Plaintiff has been forced to renew making monthly payments at new and more unfavorable terms.

### c)    Additional Information Established Thus Far

CitiFinancial and American Health have provided plaintiff with a smattering of records on February 12, 2018 that are relevant to the Court's evaluation as they establish amendment

would not be futile in the event the Court finds plaintiff's amended complaint deficient in some manner. In addition, Bayview has engaged in further breaches of contract that also amount to additional and ongoing violations of the Truth-In-Lending Act.

As noted above, counsel to CitiFinancial and American Health have forwarded plaintiff correspondence on February 12, 2018, in this they advise that American Health tendered to CitiFinancial a lump-sum payment of $16,538.68, stating that this was the full amount of benefits due under the policy. Exhibit "2". CitiFinancial asserts that receipt of the remaining benefits due resulted in a "contractual paid to date of 5/10/2018". Id. To date, no defendant has provided any basis that any such accounting entries were permissible under the terms of the policy.

On March 8, 2018, Bayview forwarded a loan statement to Ms. Martin stating that she was $38,441.29 in arrears on her mortgage. Exhibit "1". It appears Bayview is taking on its (or someone's) litigation fees to Ms. Martin's loan. Of note, the litigation at present does not involve a foreclosure, which is the only provision that allows for the assessment of attorney's fees in the note. Cmplt. at its Exhibit "A".

### 3.    LEGAL STANDARD

Defendants' motion to dismiss should be denied. In deciding a motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all favorable inferences from the facts alleged in the light most favorable to the pleading party.  Phillips v. Allegheny County, 515 F.3d 224, 228 (3d Cir. 2008).  "A court should not dismiss a complaint under Rule 12(b)(6) for failure to state a claim for relief 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.' " Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (quoting Conley v. Gibson, 355 U.S.

41, 45-46 (1957)).  In the event a Complaint fails to state a claim, the court must give the plaintiff the opportunity to amend unless amendment would be futile.  Id.  When the facts pled by a plaintiff establish a plausible claim for relief, then the motion to dismiss should be denied. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d. Cir. 2009 (relying on Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  " 'A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely.' " Fowler, 578 F.3d at 213 (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007)).

**4.    ARGUMENT**

Plaintiff has pled valid claims for breach of contract, bad faith insurance, violation of TILA and UTPCPL. The motion of these defendants should be denied. In the alternative, should the Court find some aspects of plaintiff's complaint deficient, then plaintiff respectfully requests leave to take discovery and amend. Discovery is necessary prior to amendment because defendants maintain exclusive knowledge of the business practices and arrangements at this time. In addition, as result of correspondence received from CitiFinancial's counsel on February 12, 2018, it is now clear that plaintiff and the class have claims for negligent interference with economic expectancy, tortious interference with contract and breach of fiduciary duty.

**a)    Both CitiFinancial and American Health Are in Breach of Contract.**

Plaintiff has pled valid claims of breach of contact against both CitiFinancial and American Health. The essence of the claims are set forth in bullet points below and then explained in further detail. As to American Health:

- American Health issued an credit insurance contract, (Cmplt. at ¶ 8);

- Credit insurance benefits are due and owed through May 2018, (Cmplt. at ¶ 15); but

- American Health has failed to pay the benefits owed (Cmplt. at ¶ 42, 44, 46 & 51).

As to CitiFinancial:

- CitiFinancial caused plaintiff to purchase and assisted plaintiff in purchasing an insurance contract in which it was a beneficiary;

- The credit insurance was part of Loan Agreement between CitiFinancial and Shryl Martin, in fact it was explicitly incorporated into the face of the same;

- CitiFinancial collected the premiums for this insurance until 2015, at which time it undertook the obligation to pay the same itself;

- Employees of CitiFinancial managed the credit insurance; and

- In 2015, CitiFinancial undertook control of the insurance benefits and administered the same.

- Following its taking control of plaintiff's insurance benefits, it failed or refused to pay the same.

These key points establish that like its wholly-owned subsidiary, CitiFinancial was a party to the insurance contract at issue. A party establishes a claim for breach of contract by pleading:

(1)    the existence of a contract;

(2)    a breach of duty owed; and

(3)    damages as result of breach.

Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015). As to American Health, the analysis is simple. Plaintiff pled the existence of a credit disability insurance contract that required American Health to pay her loan for five years in the event she became disabled. Cmplt. at ¶ 20. Plaintiff has pled that she became disabled and that American Health has failed to pay benefits for the five years required. Cmplt. at ¶ 15. Finally, plaintiff has pled damages in the form of facing foreclosure and having to service her mortgage while disabled. In their brief, CitiFinancial and American Health argue that the only elements of wrongdoing are directed at Bayview because Bayview demanded payments from Shryl Martin. This simplistic argument

overlooks the fact that Bayview may never had made such demands had CitiFinancial and/or American Health met their contractual obligations.[1]

Plaintiff has further pled that CitiFinancial has breached the same agreements. She alleged that CitiFinancial as well as American Health promised to pay the insurance benefits at issue. <u>Cmplt.</u> at 14. She alleged that the insurance programs at issue were managed and administered by CitiFinancial, its agents and its employees. <u>Cmplt.</u> 12. When American Health ceased offering credit disability insurance, it was CitiFinancial who advised plaintiff her loan was paid through May 2018. <u>Cmplt.</u> at 17. These are not mere legal conclusions, the scant evidence obtained thus far demonstrates CitiFinancial was part of the insurance agreement. Of note, in July 2015, CitiFinancial received the balance unpaid benefits owed upon the policy and became responsible for the administration of the same.[2] <u>Exhibit "2".</u> As such, plaintiff has pled a valid claim for breach of contract against both American Health and CitiFinancial.

**b)     Both CitiFinancial and American Health Are Insurers Who Have Acted in Bad Faith in Violation of 42 Pa.C.S. § 8371.**

Both CitiFinancial and American Health are insurers as the term is used in 42 Pa.C.S. § 8371. The statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
>      (1)  Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

---

[1]  These defendants also argued that plaintiff's allegations that they failed to pay the insurance benefits owed is a mere legal conclusion. This is borders upon frivolous argument. An allegation that someone is not paying their bills is an allegation of fact, not a legal conclusion.

[2]  The benefits are referred to as "unpaid" because the policy does not permit early lump sum payouts. The policy requires that the loan be serviced for 60 months.

(2)  Award punitive damages against the insurer.

(3)  Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. In this matter, there is no dispute that Plaintiff's action arises from an insurance policy. Nor is there a dispute that American Health is an insurer. The two items in dispute are whether CitiFinancial is an insurer and whether plaintiff has pled bad faith conduct. In regard to the latter, plaintiff has pled such conduct.

A plaintiff establishes bad faith conduct by pleading an insurer (1) does not have a reasonable basis to deny benefits under the policy; and (2) knew of or recklessly disregarded its lack of a reasonable basis. Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364, 365 (Pa. 2017).[3] Here, plaintiff has pled that the insurance policy at issue requires that benefits are paid for 60 months--or until May 2018--and that they are not. Because benefits are not being paid when they are due this necessarily means that there is no reasonable basis to deny the same.[4] Hence the only question is whether Plaintiff has adequately pled that defendants either knew or recklessly disregarded this lack of a reasonable basis. In this regard they clearly have.

As concerns knowing and recklessness, these matters go to state of mind and are thus governed by Rule 9. Rule 9 states that while the underlying circumstances of fraud or mistake must be pled with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b). Defendants argue that Shryl Martin has failed to allege bad faith circumstances because (1) she failed to pled even a breach of contract; (2) even if she had, she failed to suggest facts that establish defendants did so recklessly. As

---

[3]  Defendants correctly point out that bad faith has to be proven by "clear and convincing evidence" but burdens of proof are not involved in a motion to dismiss.

[4]  Of note, at the Rule 16 conference all defendants advised the Court that they did not intend to argue that Ms. Martin was not disabled.

discussed above, plaintiff has pled that both CitiFinancial and AHL are in breach of contract.

Second, the claim the allegations of wrongdoing again are aimed only at Bayview, but again, this

ignores the assumption that plaintiff is entitled to at this preliminary state of litigation--that

Bayview only made such demands because CitiFinancial and American Health were in breach of

their obligations. Finally, unlike Ridolfi v. State Farm Auto. Ins. Co., 146 F. Supp. 3d 619 (M.D.

2015), which involved only a harmless and immaterial misstatement of policy limits, here

Plaintiff has alleged a retention of benefits by one or both of these defendants and a subsequent

assignment and/or sale of Plaintiff's loan to Bayview. This opens an inference of self-dealing,

particular given that American Health is a wholly-owned subsidiary of CitiFinancial, and means

that plaintiff has met her burden at this preliminary stage. For example, in Rancosky, the

Pennsylvania Supreme Court noted that insurer could be found to have acted recklessly by

relying on inaccurate information provided to it by an outside physician and thereafter retaining

an insured's medical benefits. Rancosky, 170 A.3d 364 (Pa. 2017).

The more interesting questions is whether CitiFinancial should be considered an "insurer"

under § 8371. Because the term is not defined within the statute, a Court is required to look at the

totality of the circumstances to determine whether a party has acted as an insurer or not. As the

Superior Court of Pennsylvania has observed:

> There is no simple rule for determining who is the insurer for purposes of the bad
> faith statute. The question is necessarily one of fact, to be determined both by
> examining the policy documents themselves, and by considering the actions of the
> company involved. Thus, we look at two factors: (1) the extent to which the
> company was identified as the insurer on the policy documents; and (2) the extent
> to which the company acted as an insurer. *See,* Lockhart v. Federal Ins. Co., 1998
> U.S. Dist. LEXIS 4046 (E.D. Pa. March 30, 1998). This second factor is
> significantly more important than the first factor, because it focuses on the true
> actions of the parties rather than the vagaries of corporate structure and
> ownership.

Brown v. Progressive Insurance Co., 860 A.2d 493 (Pa. Super. 2004) (emphasis added). In
Brown, Progressive was found to be an insurer even though its name was not on the policy
documents because it performed all of the insurance actions at issue. Id. The Superior Court
noted, "[t]o hold otherwise would create a situation where insurers are judged not on their
actions, but on their corporate structures." Id. Plaintiff has pled a great deal of facts, which if
proven, would establish CitiFinancial was the insurer in reality. Plaintiff has alleged that
CitiFinancial sold and marketed the credit insurance. Cmplt. at 9-11. Plaintiff alleged
CitiFinancial managed and administered the credit insurance. Cmplt. at 12. Finally, evidence
obtained after the date of Plaintiff's amended complaint establishes that CitiFinancial obtained
possession of the unpaid insurance benefits and undertook to administer the same. Exhibit "2".
These facts show that plaintiff can establish that CitiFinancial acted as an insurer, and its request
to be dismissed should be denied at this preliminary stage.

### c)      Plaintiff's TILA Complaint is Timely Raised and Adequately Pled.

Defendants assert that Plaintiff's TILA claim is untimely, that AHL's failure to pay
insurance cannot cause CitiFinancial to be found in violation of the Act, and that American
Health is not a creditor under TILA. All of these arguments fail.

First, Plaintiff's TILA claim is based on a change of loan terms that occurred on October
10, 2016. This is the date when Plaintiff became required to make payments in spite of
continuing to be within the period of disability on the insurance policy. Where a claim is based
on a change in loan terms, the one-year statute of limitations begins to run on the date when the
change in terms occurred. Wulf v. Bank of Am., N.A., 798 F. Supp. 2d 568 (E.D. Pa 2011);
DiCicco v. Citizen's Financial Group, Inc., 2015 WL 5302767 (E.D. Pa. Sept. 10, 2015). Here,
the change occurred on October 10, 2016. This means plaintiff had until October 10, 2017 to

commence suit the defendants for this change. Plaintiff commenced suit against American Health on March 27, 2017. CitiFinancial was joined on September 1, 2017. Hence this TILA action was commenced against within the statute of limitations.

Second, CitiFinancial's argument that AHL's failure to pay cannot subject CitiFinancial to TILA liability overlooks CitiFinancial itself was involved in what occurred with American Health. CitiFinancial relies on <u>Smith v. Fidelity Discount Co.</u>, 898 F.2d 896 (3d Cir. 1990) for its assertion that what happened in 2016 cannot be used as a basis for TILA liability against it. The case is inapposite. <u>Smith</u> involved a $13 fee that was meant to be paid to an outside vendor, who unbeknownst to the parties, had gone out of business. The $13 was never returned to the plaintiff who argued the same was a finance charge that was not disclosed and therefore amounted to a violation of TILA. <u>Id</u>.

American Health, on the other hand, is and a wholly-owned subsidiary of CitiFinancial. In regard to the insurance product at issue, CitiFinancial administered and managed the insurance in question. <u>Cmplt.</u> at ¶ 9-12. As noted, CitiFinancial and American Health engaged in an internal transaction in which CitiFinancial received the balance of unpaid benefits from American Health. <u>Exhibit "2"</u>. As such, this is not the case of an unanticipated contingency that could not have been anticipated by the parties. This was an internal decision that the Lender reached within itself that caused the terms of plaintiff's loan to change. As such, Plaintiff has pled a valid TILA claim against CitiFinancial. Moreover, American Health should remain as a defendant as it worked in tandem with CitiFinancial in causing this present case.

     **c)**     **Plaintiff's Claim Under the UTPCPL is Timely**

The statute of limitations for a UTPCPL claim may be tolled in the state of Pennsylvania until the time that plaintiff discovers the misrepresentations that form the basis of the UTPCPL

claim.  ("[T]he standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment."); Cowell v. Palmer Twp., 263 F.3d 286, 295 (3d Cir. 2001) Plaintiff has alleged that she was unable to determine that the policy in question lacked the advertised characteristics until her claims for coverage were denied. (Doc. 29 at ¶115)

As stated in Kramer v. Dunn, **"**[A]s we have already stated herein, the discovery rule may apply to Appellants' claims of misrepresentation and, therefore, the question of when the UTPCPL's six-year statute of limitations begins to run, should be posed to a jury.**"** 749 A.2d 984 (Pa. Super. 2000). See also,  Dilworth v. Metropolitan Life Ins. Co. 418 F.3d 345 (3d.Cir 2005) Holding, "The district court recognized that "a plaintiff is entitled to exclude from the limitations period any 'time during which the injured party is *reasonably unaware* that an injury has been sustained.' " District Court opinion at 5–6 (citing *Dalrymple,* 701 A.2d at 167) (emphasis in original)."

Plaintiff has clearly plead that she was unable to determine that the insurance plan she purchased was not as advertised until such time as coverage was denied. Plaintiff has also plead a common scheme between the Defendants to deny her such coverage. Pennsylvania law holds that the discovery rule applies at the time a misrepresentation is discovered or should reasonably be discovered.

### d)    The UTPCPL Is Applicable and Plaintiff's Claims are Adequately Plead

The Supreme Court emphasized that the goal of the UTPCPL is fraud prevention, and the law is to be liberally construed to effect that purpose. Com. ex rel. Creamer v. Monumental Prop. Inc.,  329 A.2d 812, 816-17 (Pa. 1974)  The general purpose of the UTPCPL is to protect the public from "fraud and unfair or deceptive business practices."  Com. ex rel. Corbett v. Peoples Benefit

Servs. Inc., 923 A.2d 1230, 1236 (Pa. Comwlth. 2007);  Weinberg v. Sun Co., 777 A.2d 442, 446

(Pa. 2001).  The UTPCPL defines practices which constitute "unfair or deceptive acts or practices"

73 P.S. § 201-2(4).  The statute declares that those acts and practices are unlawful.  73 P.S.§ 201-3.

Courts have also interpreted the catchall section – "fraudulent conduct which creates the likelihood

of confusion or misunderstanding" – broadly, to cover a wide array of acts. Pekular v. Eich, 513

A.2d 427, 433 (Pa. Super. 1986);  Wright v. North American Life Assoc. Co.,  539 A.2d 434, 438

(Pa. Super. 1988).

 The statutory provisions of the UTPCPL are violated by representing that "services have . . .

characteristics . . . uses, benefits . . . that they do not" or representing that services are "of a

particular standard, quality . . . if they are of another."  (73 P.S.  § 201 0-2 (4)(v) and (vii)).

Plaintiff's Amended Complaint alleges that Defendants would provide services of a particular

standard and that the services had the characteristic and the benefit of providing disability coverage

of a certain type. Plaintiff has also alleged that these claims were tantamount to fraudulent

misrepresentations or fraud in the inducement. (Doc. 29 at ¶¶113-114)  The Defendants represented

that plaintiff would gain certain benefits such as covered monthly payments, convenience and

comfort (Doc. 29 at ¶ 113)  Those representations made by Defendants were false and Defendants

knew they were false.  (Doc. 29 at ¶116)  Defendants uniformly engaged in tactics designed to

render disability coverage an illusion.

 Similar allegations have been found to satisfactorily allege the misfeasance and fraud

needed to sustain a cause of action under the UTPCPL:

 1) allegations of investigating the claim "with [the] intention to deny plaintiff's

  claim  with no reasonable basis for denial" and "acted affirmatively and in bad

  faith to frustrate the . . .  claim for benefits" were misfeasance under UTPCPL,

Abramson v. State Farm Ins. 1993 WL 126413 at *5 and *6 (E.D. Pa. April 16, 1993);

2)   allegations of unfair, non-objective claim investigation and misrepresentations regarding the nature of the insurer's contractual obligations constituted misfeasance, Parasco v. Pacific Indemnity Co., 870 F. Supp. 644, 648 (E.D. Pa. 1994);

3)   allegations of promising benefits, but intending not to pay, calculating benefits daily instead of monthly and terminating coverage prematurely were actionable, Schroeder v. Acceleration Life Ins. Co. of Pa., 972 F.2d 41, 46 (3d Cir. 1992);

4)   allegations of refusal to pay an uninsured motorists' claim, use of delaying tactics, lack of a reasonable basis to deny the claim, and forcing unnecessary litigation stated an action under the UTPCPL, Lites v. Great Am. Ins. Co., 2000 WL 875698 *5 (E.D. Pa. June 23, 2000);

5)   allegations that the insurer failed to negotiate and otherwise handle the policy holder's claim stated a cause of action under UTPCPL; Carlucci v. Maryland Cas. Co., 1999 WL179750 *1 (E.D. Pa. March 15, 1999);

6)   allegations that the limitation in coverage was obtained by misrepresentations of the insurer and agent- "[u]nquestionably the alleged unfair or deceptive acts or practices of Eich and State Farm fall within the expansive language of the CPL", Pekular v. Eich, 513 A.2d 427, 433 (Pa. Superior Ct. 1986); and

7)   allegations, seeking a recovery of all premiums paid for purchase life insurance since the decision to purchase was based on false representations,

stated actions for common law fraud and UTPCPL, <u>Wright v. North American</u>

<u>Life Assurance Co.</u>, 539 A.2d 434, 439 (Pa. Superior Ct. 1988).

In examining questions regarding the tort/contract distinctions, courts have found that once

misfeasance in the allegations of the complaint have been identified, it will follow that a tort has

been implicated and the action may proceed in tort.  <u>Raab v. Keystone Insurance Co.</u>, 412 A.2d 638,

639 (Pa. Superior Ct. 1979) app. dis. 437 A.2d 941 (Pa. 1981); <u>Grode v. Mutual Fire, Marine, and</u>

<u>Inland Insurance Co.</u>, 623 A.2d 933, 935 (Pa. Cmwlth. 1993) (action may be brought in tort "when

the complaint alleges improper performance of a contract, rather than nonperformance."  Similarly,

under the UTPCPL, once the misfeasance alleged in the complaint is acknowledged, fraud should

be deemed to be sufficiently alleged.  However, the arguments surrounding the issues below

regarding fraud, are incorporated and also support proceeding under the UTPCPL.

Defendants' claim that their advertising materials suggesting their policy had certain

characteristics are puffery but fail to cite any case law dealing with language similar to their own.

CitiFinancial and AHL have made claims regarding when benefits are payable under their policy

and the convenience of premium payments based on a single billing statement. (Doc. 29 at ¶113).

These statements were geared towards promoting customer reliance and are verifiable facts and as

such they do not constitute puffery.

See generally, <u>In re Milo's Dog Treats</u> 9 F.Supp.3d 523 (W.D.Pa 2014), each of the cited

alleged misrepresentations appear to be verifiable facts and sufficiently specific to induce

customer reliance. Consequently, they do not constitute "mere puffery." See <u>Williams v. Gerber</u>

<u>Products Co.</u>, 552 F.3d 934, 939 n. 3 (9th Cir.2008) (finding that that the defendants statement

that Fruit Juice Snacks is made with "fruit juice and other all natural ingredients" and is

"nutritious" was actionable); <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1145 (9th

Cir.1997) (company's advertisement that its slow-growing grass required "50% Less Mowing" was an actionable statement of fact); Sterling Drug, Inc. v. FTC, 741 F.2d 1146, 1151–53 (9th Cir.1984) (company's claim that its brand of aspirin was consistently better than other brands "for purity, stability, and speed of disintegration" was properly determined not to be puffery); Chacanaca v. Quaker Oats Co., 752 F.Supp.2d 1111, 1125–26 (N.D.Cal.2010) (finding that the term "wholesome" could arguably mislead a reasonable consumer and thus cannot be deemed to constitute non-actionable puffery).

Finally, Plaintiff has adequately alleged justified reliance in that she has alleged she relied on the on the representations made by the defendants through her acceptance of the benefits in question. (Doc. 29 at ¶ 118). See Seldon v. Home Loan Services, Inc., 647 F.Supp.2d 451, 469-70 (E.D. Pa. 2009). Under this standard, a plaintiff must demonstrate that he or she "justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the [defendants'] misrepresentation" or deception. Id. Plaintiff has alleged that she only purchased the policy in question because she relied on the representations that benefits would be paid.

Accordingly, Defendants' arguments that the Complaint does not plead sufficient facts state a cause for fraudulent misrepresentation under the UTCPL should be denied.

**e)     Plaintiff's UTPCPL Claims are not Barred by the Gist of the Action Doctrine.**

The Defendants' argument that Plaintiff's claims are barred by the Gist of the Action Doctrine ignores that Plaintiff has set forth a claim for fraud in the inducement which is separate from the contract itself. While the gist of the action doctrine may bar a tort claim arising from the performance of a contract it does not "bar a fraud claim stemming from the fraudulent inducement to enter into a contract." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719

(Pa.Super.2005). See also, <u>Mirizio v. Joseph</u> 4 A.3d 1073 (Pa.Super 2010) For the reasons that follow, we conclude that Mirizio's actions constituted fraud in the inducement, and therefore, the claim for fraud and misrepresentation was not barred by the gist of the action doctrine.

The Pennsylvania Supreme Court outlined a test for determining the applicability of the gist of the action doctrine that stressed the necessary existence of a recognized duty that is outside the scope of the parties' contractual duties in order to sustain an actionable tort action alongside a breach of contract claim. <u>Bruno v. Erie Ins. Co</u>. 106 A.3d 48. (Pa. 2014). If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. <u>Ash v. Cont'l Ins. Co.,</u> 593 Pa. 523, 932 A.2d 877, 885 (2007).

Plaintiff has alleged a scheme whereby she was induced to accept a disability policy as part of a mortgage contract and then denied coverage and harmed by threats to initiate foreclosure on her home. (Doc. 29 at ¶¶22-26). The Defendants owe a duty to the general public not to bundle these separate services in this manner and then subsequently severe their duty to pay insurance benefits in order to deprive individuals of the benefit of the policy. The actions of the defendants go beyond a simple breach of contract. The rationale in <u>Mirizio</u> should be applied to the rationale in <u>Bruno</u> and Plaintiff's claims should not be barred by the Gist of the Action Doctrine as the fraudulent inducement to enter the contract and subsequent harm are entirely separate from the contract itself.

**f)**      **Economic Loss Doctrine**

The Defendants present their theory that Plaintiff's claims should be barred by the economic loss doctrine on case law that has come into question within the last several years. More importantly, the Defendants have also ignored the relevant portions of the Complaint which state that the Plaintiff has suffered non-economic losses such as great shame and emotional injury due to their threating campaign to initiate foreclosure proceedings against her. (Complaint ¶22-26)

Chiefly, Defendant's reliance on Werwinski v. Ford Motor Co. 286 F.3d 661 (3d Cir. 2002) for their argument that the economic loss doctrine applies in this case. In refusing to follow Werwinski, Judge Antwerpen, then a federal district court judge, correctly noted that "Pennsylvania's statutory construction statute clearly bars applying common law doctrine to overturn legislative acts enacted after September 1, 1937." O'Keefe v. Mercedes–Benz USA, LLC. 214 F.R.D. 266, 275 (E.D.Pa.2003)

Since Werwinski issued, the Pennsylvania courts have spoken. They have held that the economic loss doctrine does not apply to UTPCPL claims. The Pennsylvania Supreme Court has not expressly held that the economic loss doctrine precludes recovery for economic losses resulting from violations of the UTPCPL. The Pennsylvania Superior Court has held that the doctrine does not bar statutory fraud claims brought pursuant to the UTPCPL. Knight v. Springfield Hyundai, 81 A.3d 940, 952 (Pa.Super.2013). Furthermore, the Pennsylvania Supreme Court has acknowledged that a negligent misrepresentation claim is outside the reach of the economic loss doctrine. Bilt–Rite Contractors, Inc. v. The Architectural Studio, 581 Pa. 454, 866 A.2d 270, 288 (2005).

As Plaintiff has alleged non-economic losses in her Complaint and Pennsylvania courts have held that the economic loss doctrine is not a wholesale bar to claims under the UTPCPL, Plaintiff should be allowed to proceed with her UTPCPL claims.

**5.     Leave to Amend After Discovery**

In the event any section of the Plaintiff's Amended Complaint is determined to require additional specificity, Plaintiff requests leave to amend. To the extent necessary, Plaintiff further requests leave to amend her complaint after discovery as defendants are in exclusive possession of the relevant and necessary information for this case.

**6.     Conclusion**

For the reasons set forth above, defendant Bayview's motion to dismiss should be denied in its entirety.

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**


_____/s/ David M. Kobylinski_____
David M. Kobylinski, Esquire
515 Court Place, Ste 4
Pittsburgh, PA 15219
pkobylinski@prlawgroup.com
(p) 412.281.6600

March 24, 2018